**Nos. 20-1141, 20-1142, 20-1143, 20-1149, 20-1150, 20-1151**

# United States Court of Appeals for the Federal Circuit

INTEX RECREATION CORP.

*Appellant*,

BESTWAY (USA), INC.,

*Appellee*

v.

TEAM WORLDWIDE CORPORATION

*Cross-Appellant*,

v.

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Intervenor*

Appeal from the United States Patent and Trademark Office – Patent Trial and Appeal Board in Nos. IPR2018-00870, IPR2018-00871, IPR2018-00872, IPR2018-00873, and IPR2018-0074.

**APPELLANT'S CORRECTED RESPONSE & REPLY BRIEF**
**NONCONFIDENTIAL VERSION**

R. Trevor Carter
Andrew M. McCoy
Reid E. Dodge
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204

Tel: 317-237-0300
Fax: 317-237-1000
E-mail: trevor.carter@faegredrinker.com
E-mail: andrew.mccoy@faegredrinker.com
E-mail: reid.dodge@faegredrinker.com

Bethany N. Mihalik
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005
Tel: 202-230-5000
Fax: 202-842-8465
E-mail: bethany.mihalik@faegredrinker.com

*Counsel for Appellant, Intex Recreation Corp.*

# APPELLANT'S CERTIFICATE OF INTEREST

Counsel for Appellant hereby certifies the following:

1. The full names of the parties represented by me is:

**Intex Recreation Corp.**

2. The name of the real party in interest (not identified in Question 3) represented by me is:

**N/A.**

3. All parent corporations and publicly held companies that own 10 percent or more of stock in the party:

**Intex Recreation Corp. is a wholly-owned subsidiary of Intex Corp., a privately held company with no public entity owning any portion thereof.**

4. The names of all law firms and the partners or associates that appeared for the party now represented by me at the Patent Trial and Appeal Board proceeding or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

**None.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

***Intex Recreation Corp. v. Team Worldwide Corporation*, Case IPR2018-00859, was remanded to the Patent Trial and Appeal Board following an opinion from this Court vacating the Board's determination of non-obviousness in Federal Circuit appeal No. 20-1144. After remand, on April 15, 2022, the Board found all challenged claims unpatentable as obvious. The Final Written Decision on remand is the subject of Federal Circuit appeal No. 2022-1860.**

***Intex Recreation Corp. v. Team Worldwide Corporation*, Case IPR2018-00875, subject to Federal Circuit appeal No. 20-1147.**

***Team Worldwide Corporation v. Macy's, Inc. & Macys.com, LLC,* No. 2:19-cv-00099-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Target Corporation and Target Brands, Inc.*, No. 2:19-cv-00100-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. The Home Depot, Inc.*, No. 2:19-cv-00098-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Dick's Sporting Goods, Inc.*, No. 2:19-cv-00097-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Costco Wholesale Corporation*, No. 2:19-cv-00096-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Bed Bath & Beyond, Inc.*, No. 2:19-cv-00095-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Amazon.com, Inc. and Amazon.com LLC*, No. 2:19-cv-00094-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Ace Hardware Corporation*, No. 2:19-cv-00093-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Academy, Ltd. d/b/a Academy Sports + Outdoors*, No. 2:19-cv-00092-JRG (E.D. Tex.)**

***Team Worldwide Corporation v. Sears, Roebuck and Co., Sears Holdings Corporation, and Transform Holdco LLC*, No. 2:20-cv-00006 (E.D. Tex.)**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

**None.**

Dated: October 5, 2022

*/s/ Bethany N. Mihalik*
Bethany N. Mihalik

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........................................................ 1

REPLY ........................................................................................................ 3

I. The Board's 873 Decision Should be Reversed, or at a Minimum, Remanded ........................................................................ 5

A. It Is Undisputed that the Board Changed the Agreed Construction of "Built Into" Without Providing an Opportunity for Intex to Respond .............................................. 5

B. TWW "Effectively Concedes" that the Board's "At-Least-Partial Recess Requirement" is Not the Broadest Reasonable Construction of "Built Into" by Failing to Respond ........................................................................................ 8

C. TWW Does Not Respond to the Board's Errors in Applying Its New—and Incorrect—Construction ..................... 9

II. The Board's 872 Decision Should be Reversed, or at a Minimum, Remanded ...................................................................... 13

A. TWW's Flawed Retelling Misses the Point ............................. 13

REPLY CONCLUSION ........................................................................... 16

CROSS-APPEAL RESPONSE ............................................................... 17

REBUTTAL STATEMENT OF THE ISSUES ........................................ 17

REBUTTAL STATEMENT OF THE CASE ........................................... 18

I. The '394 Patent and Companion Appeals ........................................ 18

II. Prior Art & Motivations in the Art ................................................... 20

A. Chaffee .................................................................................. 20

B. Goldsmith .............................................................................. 21

C. Wu ......................................................................................... 22

D. Design Pressures & Motivations in the Art ............................ 22

SUMMARY OF ARGUMENT ............................................................... 26

STANDARD OF REVIEW ..................................................................... 29

ARGUMENT .......................................................................................... 31

I. Substantial Evidence Supports the Board's Conclusion that Chaffee Discloses a Housing "Built Into" the Inflatable Body .........31

A. TWW Ignores the Express Chaffee Teachings Credited by the Board .........31

B. TWW's Rehash of Rejected Arguments Related to Chaffee's File History is Unavailing .........35

II. The Board Correctly Construed "Inflatable Body" .........36

A. The Board's Construction of "Inflatable Body" Is the Broadest Reasonable Construction .........37

B. TWW Cites No Precedent for Its Novel Theory of Prosecution History Disclaimer Expanded to Unrelated Patents .........40

C. Wu Discloses an "Inflatable Body" .........43

D. The Goldsmith Combinations Disclose an "Inflatable Body" .........43

III. The Board's Secondary Considerations Analysis is Supported by Substantial Evidence .........45

A. The Board's Findings of No Nexus for TWW's Own Airbeds or all "Built-In Pump" Airbeds is Supported by Substantial Evidence .........46

B. The Board's Finding that the Commercial Success is Not Due to the Patented Features is Supported by Substantial Evidence .........49

C. The Board Did Not "Ignore" Properly Presented Evidence .........50

IV. The Board's Finding of a Motivation to Combine Each of the Combinations is Supported by Substantial Evidence .........55

A. The Board's Finding of a Motivation to Combine Wu and Chaffee is Supported by Substantial Evidence .........56

B. The Board's Finding of a Motivation to Combine Wu and Goldsmith is Supported by Substantial Evidence .........57

C. The Board's Finding of a Motivation to Combine Walker and Chaffee is Supported by Substantial Evidence .........58

D. The Board's Finding of a Motivation to Combine Walker and Goldsmith is Supported by Substantial Evidence.............59

E. The Board's Finding of a Motivation to Combine Chaffee and Wu is Supported by Substantial Evidence ..........60

F. The Board's Finding of a Motivation to Combine Chaffee, Scott, and Pisante is Supported by Substantial Evidence..........................................................................61

CROSS-APPEAL CONCLUSION.........................................................................63

**CONFIDENTIAL MATERIAL OMITTED:**

The material omitted on page 49 indicates a percentage or ratio of product sales, and the material omitted on page 51 identifies confidential customer information.

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097 (Fed. Cir. 2002) ....42

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366 (Fed. Cir. 2020) ....56, 59

*Agarwal v. TopGolf Int'l, Inc.*, 813 F. App'x 476 (Fed. Cir. 2020) ....30, 55

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) ....29

*Belden Inc. v. Berk–Tek LLC*, 805 F.3d 1064 (Fed. Cir. 2015) ....6

*Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132 (Fed. Cir. 2003) ....41

*CardSoft v. Verifone, Inc.*, 769 F.3d 1114 (Fed. Cir. 2014) ....9

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197 (1938) ....30

*Deep Green Wireless LLC v. Ooma, Inc.*, 809 F. App'x 804 (Fed. Cir. 2020) ....39, 40

*Duramed Pharms., Inc. v. Watson Labs., Inc.*, 413 F. App'x 289 (Fed. Cir. 2011) ....26, 34

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354 (Fed. Cir. 2018) ....30, 57, 61

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973 (Fed. Cir. 1999) ....41

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) ....30

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ....................47, 49

G*emtron Corp. v. Saint-Gobain Corp.*,
572 F.3d 1371 (Fed. Cir. 2009) ....................62

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) ....................51, 52

*In re Cree, Inc.*,
818 F.3d 694 (Fed. Cir. 2016) ....................47, 51, 62

*In re CSP Techs., Inc.*,
840 F. App'x 577 (Fed. Cir. 2021)....................44

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ....................30

*In re Devlin*,
833 F. App'x 335 (Fed. Cir. 2020) ....................29

*In re Ethicon, Inc.*,
844 F.3d 1344 (Fed. Cir. 2017) ....................45

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ....................30

*In re Huang*,
100 F.3d 135 (Fed. Cir. 1996) ....................50, 51

*In re Kao*,
639 F.3d 1057 (Fed. Cir. 2011) ....................46

*In re Kavanagh*,
851 F. App'x 1028 (Fed. Cir. 2021) ....................44

*In re Morris*,
127 F.3d 1048 (Fed. Cir. 1997) ....................38

*In re Translogic Tech., Inc.*,
504 F.3d 1249 (Fed. Cir. 2007) ....................38

*In re Urbanski*,
809 F.3d 1237 (Fed. Cir. 2016) ....................29

*Institut Pasteur v. Focarino*,
738 F.3d 1337 (Fed. Cir. 2013) ....................46, 50

*Intex Recreation Corp. v. Team Worldwide Corp.*,
860 F. App'x 717 (Fed. Cir. 2021) ....................23, 40, 58

*Lingamfelter v. Kappos*,
513 F. App'x 934 (Fed. Cir. 2012) ....................30

*Metso Minerals, Inc. v. Powerscreen Int'l Distr., Ltd.*,
526 F. App'x 988 (Fed. Cir. 2013) ....................11

*Novartis AG v. Torrent Pharms. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) ....................46, 53, 55

*Omega Eng'g, Inc, v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ....................41

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
457 F.3d 1284 (Fed. Cir. 2006) ....................42

*PGS Geophysical AS v. Iancu*,
891 F.3d 1354 (Fed. Cir. 2018) ....................29

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018) ....................15

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) ....................6

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ....................45

*SAS Inst., Inc. v. ComplementSoft, LLC*,
825 F.3d 1341 (Fed. Cir. 2016) ....................6, 7

*Senju Pharm. Co. v. Lupin Ltd.*,
780 F.3d 1337 (Fed. Cir. 2015) ....................11

*Skedco, Inc. v. Strategic Operations, Inc.*,
685 F. App'x 956 (Fed. Cir. 2017) ....................34

*SkinMedica, Inc. v. Histogen Inc.*,
727 F.3d 1187 (Fed. Cir. 2013) ....................35

*Skky, Inc. v. MindGeek, s.a.r.l.*,
859 F.3d 1014 (Fed. Cir. 2017) ....................30

*Smith & Nephew, Inc. v. Rea*,
721 F.3d 1371 (Fed. Cir. 2013) ....................34

*Software Rts. Archive, LLC v. Facebook, Inc.*,
659 F. App'x 627 (Fed. Cir. 2016) ....................34

*St. Jude Med., LLC v. Snyders Heart Valve LLC*,
977 F.3d 1232 (Fed. Cir. 2020) ....................43

*Starhome GmbH v. AT&T Mobility LLC*,
743 F.3d 849 (Fed. Cir. 2014) ....................37

*Tec Air, Inc. v. Denso Mfg. Michigan Inc.*,
192 F.3d 1353 (Fed. Cir. 1999) ....................51

*Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)....................30

*TQ Delta, LLC v. CISCO Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) ....................56, 59

*Trading Techs. Int'l, Inc. v. Open E Cry*, *LLC*,
728 F.3d 1309 (Fed. Cir. 2013) ....................41

*Weinar v. Rollform Inc.*,
744 F.2d 797 (Fed. Cir. 1984) ....................4, 8

**FEDERAL STATUTES**

5 U.S.C. § 706(2)(A), (D) ....................7

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellant Intex Recreation Corp., provide as follows:

1. There has been no previous appeal in this case.

2. The patent at issue, the ’394 Patent, is the subject of the following related and pending proceedings in the United States District Court for the Eastern District of Texas (collectively, the “EDTX Litigations”):

- *Team Worldwide Corporation v. Macy’s, Inc. & Macys.com, LLC*, No. 2:19-cv-00099-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Target Corporation and Target Brands, Inc.*, No. 2:19-cv-00100-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. The Home Depot, Inc.*, No. 2:19-cv-00098-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Dick’s Sporting Goods, Inc.*, No. 2:19-cv-00097-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Costco Wholesale Corporation*, No. 2:19-cv-00096-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Bed Bath & Beyond, Inc.*, No. 2:19-cv-00095-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Amazon.com, Inc. and Amazon.com LLC*, No. 2:19-cv-00094-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Ace Hardware Corporation*, No. 2:19-cv-00093-JRG (E.D. Tex.);
- *Team Worldwide Corporation v. Academy, Ltd. d/b/a Academy Sports + Outdoors*, No. 2:19-cv-00092-JRG (E.D. Tex.);

- *Team Worldwide Corporation v. Sears, Roebuck and Co., Sears Holdings Corporation, and Transform Holdco LLC*, No. 2:20-cv-00006 (E.D. Tex.).

3. The EDTX Litigations also involve U.S. Patent No. 9,211,018 (the "'018 Patent") and U.S. Patent No. 7,346,950 (the "'950 Patent"), which are directed to related technology. The pending IPR appeals related to the '018 Patent and '950 Patent are designated companion cases to the present appeal. (ECF No. 63.)

- On October 21, 2019, the Board found all challenged claims of the '018 Patent to be patentable in IPR2018-00859. On June 21, 2021, this Court vacated the Board's determination of non-obviousness and remanded "for further proceedings consistent with this opinion" in Case No. 20-1144. On April 15, 2022, the Board issued a Final Written Decision on Remand in IPR2018-00859 and found all challenged claims unpatentable as obvious. The Final Written Decision on remand is the subject of Federal Circuit appeal No. 2022-1860. Intex's responsive brief in appeal No. 2022-1860 is due October 24, 2022.

- The Board found all challenged claims of the '950 Patent to be unpatentable in IPR2018-00875. This decision is the subject of an appeal before this Court in appeal No. 20-1147. Briefing is complete in appeal No. 1147, but no oral argument date has been scheduled.

# **REPLY**

TWW largely fails to respond to the arguments or authorities presented in the Blue Brief. Because uncontested arguments and authorities establish that the Board erred, procedurally and substantively, Intex respectfully asks this Court to remand or reverse the 873 and 872 Final Written Decisions.

***First***, as to the 873 Decision, the only question is whether Parienti teaches a "housing ***built into*** the inflatable body." (Blue Br. at 12; Red Br. at 20-23 (failing to identify the statement as an area of disagreement in the Rebuttal Statement of Facts)). The Board's finding that Parienti's housing was not "built into" the inflatable body is based on a claim construction that is both procedurally and substantively defective. Notably, TWW agrees that the Board changed the agreed construction of "built into," acknowledging that the Board "***refine[d]***" the claim construction to add the "at-least-partial recess requirement." (Red Br. at 47 (emphasis added)). TWW does not argue that Intex was provided notice or an opportunity to respond to this new construction, but instead (apparently confusing the requirements of the APA) argues that, because the Board provided an explanation of the change, the Board was not required to provide notice or an opportunity to respond. (Red Br. at 45–47). This is, of course, incorrect, resulting in Intex's challenge to the Board's procedural error enduring as essentially undisputed. Nor does TWW address ***at all*** Intex's evidence or authorities as to the substantive

errors in the Board's new construction of "built into." (Blue Br. at 26–29). Further, rather than addressing (1) the legal error in the Board's evaluation of whether pipe 9 is part of the "housing"; or (2) the record evidence demonstrating that pipe 9 is part of the "housing" (Blue Br. at 29–33), TWW erects a strawman regarding the Board's rejection of reply arguments (Red Br. at 43–45), an issue not even raised in the Blue Brief. These uncontested arguments, evidence, and authorities establish that the Board's substantive errors in construing and applying the new construction of "built into" as requiring an "at-least-partial recess" in the 873 Decision require reversal or, at a minimum, remand. *Weinar v. Rollform Inc.*, 744 F.2d 797, 804 (Fed. Cir. 1984) (relying on "uncontested" authorities to vacate jury award where brief "does not respond to [] argument and authorities").

***Second***, as to the 872 Decision, TWW's brief is similarly non-responsive. TWW first addresses an alternative proposed modification that is not part of this appeal (Red Br. at 36–37).[1] TWW then block cites the Board's decision, but omits what the Board describes as the basis of their finding: the "preferred location" taught in Miller for valve 50. (*Compare* Red Br. at 37–40 *with* Appx332.) TWW does not address the authorities or evidence cited by Intex regarding the lack of a

---

[1] Intex is not challenging the Board's finding with respect to the alternative substitution of Miller's rotary vane pump for Miller's Wankel pump.

statement of preference in Miller or the Board's mistake regarding the same, (Blue Br. at 33–38). Finally, TWW asserts that Intex made a "new argument" regarding the ability of a skilled artisan to retain Miller's housing-contained design and locate Scott's directional valve 68 within that housing. TWW is wrong; Intex cited the same references Dr. Beaman pointed to in his declaration. Notably TWW does not challenge any design motivation—including compactness, durability, and the predictability of the art. (Blue Br. at 15–17; Red Br. at 20–23 (failing to identify design motivations as an area of disagreement in the Rebuttal Statement of Facts).) Because it is uncontested that the only reasoning cited by the Board as teaching away from the proposed modification does not exist—that is, there is no "statement of preference" for the valve location in Miller—the Board's finding of no motivation to combine the Miller and Scott references as asserted is not supported by substantial evidence, requiring reversal or, at a minimum, remand.

## I. The Board's 873 Decision Should be Reversed, or at a Minimum, Remanded

### *A. It Is Undisputed that the Board Changed the Agreed Construction of "Built Into" Without Providing an Opportunity for Intex to Respond*

In the 873 Decision, the Board diverged from the agreed claim construction of "built into," holding for the first time in the proceeding that the term requires "***at least some*** level of recess of the 'housing' ***into*** the 'inflatable body.'" (Appx383 (emphasis original)). TWW acknowledges that the Board changed the agreed

construction of "built into" in the '873 Decision, referring to the change as "the Court's [sic] ***refinement of the meaning*** of the 'integrated into' portion of the term 'built into.'" (Red Br. at 47 (emphasis added)). TWW fails to argue that this "refinement of the meaning" was not materially different than the agreed construction. TWW does not identify anywhere in the record where either party was provided notice of this "refinement of the meaning," and TWW does not identify anywhere in the record where either party was provided an opportunity to respond to this "refinement of the meaning." That ends the inquiry and requires remand.

As Intex explained (Blue Br. at 23), under the APA, IPR petitioners "shall be timely informed of . . . the matters of fact and law asserted." *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1351 (Fed. Cir. 2016), *rev'd and remanded on other grounds sub nom. SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018). Relevant here, the Board "may not change theories in midstream without giving respondents 'reasonable notice of the change' and 'the opportunity to present argument under the new theory.'" *Id.* at 1351 (quoting *Belden Inc. v. Berk–Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015)). This requirement extends to claim construction: the Board may not adopt a claim construction that "diverge[s] from the agreed-upon" construction, *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263 (Fed. Cir. 2021), or "varies significantly from [the] initial interpretation," *SAS Inst.*, 825 F.3d at 1351. TWW does not distinguish any of these cases or offer contrary precedent. Rather,

TWW argues that because the Board explained why it changed the claim construction, it complied with the APA. (Red Br. at 45–47). But TWW is wrong.

TWW's argument confuses the requirements of the APA and the issue in *Arthrex*. The requirement for reasoned decision making—colloquially, that the agency must show its work—is separate from the requirement for notice and an opportunity to respond. *See* 5 U.S.C. § 706(2)(A), (D) (agency action violates the APA if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" ***or*** "without observance of procedure required by law"). That the Board explained why it diverged from the agreed-upon construction in the 873 Decision does not excuse the failure to provide the parties notice and an opportunity to respond to the "at-least-partial recess requirement" construction of "built into." For example, in *SAS Institute*, discussed in the Blue Brief (Blue Br. at 23, 25–26), the Court agreed with the Board's changed claim construction, but nonetheless remanded the case to allow the parties an opportunity to respond to the changed construction. 825 F.3d at 1350 ("[W]e agree with the Board's ultimate construction of the 'graphical representations of data flows' claim term. The Board's procedure for arriving at this construction, however, gives us pause."). TWW's argument that the Board "sufficiently articulated [its] analysis" (Red Br. at 47) is irrelevant to the question of whether the parties were provided notice and an opportunity to respond, as required under this Court's precedent and the APA.

Here, it is undisputed that (1) the parties adopted an agreed construction of "built into" (Blue Br. at 22; Red Br. at 42); and (2) the Board diverged from ("refine[d]") the agreed meaning of "built into" (Blue Br. at 18; Red Br. at 47). TWW does not argue that the "refinement" is insignificant, and TWW does not identify anywhere in the record where Petitioners were provided with notice of the Board's "at-least-partial recess" requirement.

Undisputed arguments and uncontested authority establish that the Board's 873 Decision is procedurally deficient. *Weinar*, 744 F.2d at 804 (relying on "uncontested" authorities to vacate decision where brief "does not respond to [] argument and authorities"). The parties agreed that "built into" would be interpreted as "integrated into and not detachable from" and provided arguments and evidence directed to establishing that Parienti taught the claimed "housing built into the inflatable body" under that construction. The Board's divergence in the 873 Decision to hold Petitioners for the first time to a different, new construction—the "at-least-partial recess" requirement—was error. (Appx383). Accordingly, remand of the 873 Decision is required.

### *B. TWW "Effectively Concedes" that the Board's "At-Least-Partial Recess Requirement" is Not the Broadest Reasonable Construction of "Built Into" by Failing to Respond*

TWW wholly fails to address Intex's argument (Blue Br. at 26–29) as to the Board's substantive error in newly construing "built into" to require an "at-least-

partial recess" of the housing into the inflatable body—specifically, that the Board's construction renders superfluous limitations in related patents. By failing to respond, TWW has effectively conceded the argument. *See, e.g.*, *CardSoft v. Verifone, Inc.*, 769 F.3d 1114, 1119 (Fed. Cir. 2014), *judgment vacated in non-relevant part sub nom. CardSoft, LLC v. VeriFone, Inc.*, 576 U.S. 1049 (2015) ("By failing to respond to VeriFone's argument in the [responsive] briefing, CardSoft has effectively conceded that the accused devices run applications that depend on a specific underlying operating system or hardware."). Because it is uncontested that the Board's new construction of "built into" is legally deficient and not the broadest reasonable construction, this alone provides a basis for the Court to vacate and remand the 873 Decision.

### *C. TWW Does Not Respond to the Board's Errors in Applying Its New—and Incorrect—Construction*

TWW does not directly respond to the legal and factual errors identified by Intex in the Board's application of the (procedurally and substantively deficient) "at-least-partial recess" requirement to Parienti.

***First***, TWW is wrong that Petitioners did not identify pipe 9 as part of the housing until the reply. (Red Br. at 43). As the Board recognized, and as illustrated in the demonstrative from the Petition below, Petitioners identified pipe 9 as part of the housing in the Petition:




Fig. 4

(Appx3702–3703 ("Parienti also disclosed a housing (gray)."); Appx366 (the Board reproducing same)). Moreover, to the extent TWW's (irrelevant) discussion of Petitioner's reply before the Board (Red Br. at 43–45) is construed as an argument that Intex's appellate arguments were not properly presented before the Board, TWW is incorrect. First, Petitioners could not have relied on pipe 9 to show that the housing was "at least partially recessed" into the inflatable body because that requirement was newly (improperly) added to the claim construction in the 873 Decision. (Appx383). Further, the evidence and arguments cited by Intex on appeal do not come from Petitioner's reply, but rather, derive from record evidence and arguments that were timely made before the Board. (*See, e.g.*, Appx3702–3703 (identifying pipe 9 as part of the "housing" in Fig. 4); Appx366 (the Board acknowledging that Figs. 4 and 5 depict the same "housing" (citing Intex's petition at Appx3695, Appx3703)). TWW's attempt to assert that Intex's arguments were not properly presented before the Board is, accordingly, wrong.

***Second***, TWW does not challenge the precedent cited regarding the legal error in the Board's insistence that Parienti's pipe 16—a feature that did not correspond to any claimed feature—had some relevance to determining whether pipe 9 was part of the housing. (*Compare* Blue Br. at 31 (citing *Metso Minerals, Inc. v. Powerscreen Int'l Distr., Ltd.*, 526 F. App'x 988, 996–97 (Fed. Cir. 2013) (noting it is "irrelevant" whether prior art taught an unclaimed feature); *Senju Pharm. Co. v. Lupin Ltd.*, 780 F.3d 1337, 1347 (Fed. Cir. 2015) (noting unclaimed features are "not relevant to the obviousness determination")) *with* Appx379–380).

***Third***, TWW does not respond to the evidence in Parienti that Intex identified in the Petition as teaching that pipe 9 is part of the housing. TWW does not address the description of Figure 4—which includes pipe 9—as depicting a "cross-section" of the device—depicted in Figure 5—that the Board identified as the "housing." (Blue Br. at 29–31, 32; Appx379; Appx6957, Fig. 5; Appx3702–3703 (Petition identifying pipe 9 as part of the housing)). TWW likewise does not address the functional relationship between switch 3—which is undisputedly part of the housing—and pipe 9. (Blue Br. at 32; Appx6960, 3:7-15; Appx6957, Fig. 5; Appx366).

Here, the undisputed record establishes: (1) Figure 5 discloses the "housing" of the '394 Patent (Appx379 ("The record supports Petitioner's position . . . that the box-shaped structure shown in Figure 5 is a 'housing.'"); Red Br. at 23–24); (2)

Figure 4 depicts the same "device" as Figure 5—that is, the "housing" of the '394 Patent (Appx379 ("Figure 4 'is a cross-section of the device shown' in Figure 5."); Red Br. at 22); (3) pipe 9 is positioned within the mattress (Appx379; Red Br. at 44 (noting pipe 9 "is located in the mattress")); and (4) pipe 9 was identified in the Petition as part of the "housing" (Appx3702–3703 ("Parienti also disclosed a housing (gray)."); Appx366). Even under the Board's procedurally and substantively deficient construction of "built into," timely record evidence and argument establishes that the housing of Parienti is "built into" the mattress, at least via pipe 9.

* * *

TWW does not dispute that the Board diverged from the agreed-upon construction of "built into" in the 873 Decision without providing notice or an opportunity to respond. TWW did not address—and therefore, concedes—that the "at-least-partial recess" requirement is not the broadest reasonable construction of "built into." And TWW does not respond to the legal and factual errors in the application of the Board's "at-least-partial recess" requirement, arguing only (incorrectly) that the arguments were not properly presented before the Board. Accordingly, Intex respectfully asks the Court to reverse, or at a minimum, remand, the Board's procedurally and substantively defective 873 Decision.

## II. The Board's 872 Decision Should be Reversed, or at a Minimum, Remanded

### *A. TWW's Flawed Retelling Misses the Point*

TWW does not challenge the Board's finding that it would have been obvious for a skilled artisan to substitute Scott's uni-directional pump for Miller's reversible pump. (Appx323; Red Br. at 37–40). The only question on appeal is whether in making that substitution, the skilled artisan would have located Scott's movable air conduit—directional valve 68—at least partially within Miller's housing. (Blue Br. at 34). The Board's finding that such an arrangement was nonobvious was not based on a teaching away, but rather on an alleged teaching of a "preferred" valve location. (Appx332.) The Board was mistaken, as no such preference statement exists. TWW does not identify any preference statement, but instead engages in a flawed retelling of the proceedings before the Board.

***First***, TWW is wrong that the "Board found that Miller teaches away" from locating Scott's directional valve 68 within Miller's housing. (Red Br. at 34). The Board, in fact, explicitly held the opposite: "[W]e do not find that Miller, by disclosing its valve 50 outside of air cell 20, teaches away from other valve locations, including in the housing." (Appx332).

***Second***, there is no dispute that valve 50 in Miller is located outside the pump housing. (Red Br. at 34–36). That uncontroversial statement does not end the inquiry as to whether a skilled artisan, in substituting Miller's pump for Scott's pump, would

have located directional valve 68—the movable air conduit—within the pump housing.

***Third***, the alternative proposed substitution of Miller's vane pump for a Wankel pump (Red Br. at 36–37) is not challenged on appeal and is irrelevant to the substitution that is at issue in this appeal: the substitution of Scott's uni-directional pump and directional valve 68 for Miller's reversible pump. For the Court's reference, the Board's discussion of the substitution at issue in this appeal begins on Appx326.

***Fourth***, Intex has not made "new arguments" on appeal. (Red Br. at 40–42). The cited references appear in Dr. Beaman's report in support of the ***same sentence*** TWW alleges constitutes "new argument":

> [A] POSA would have appreciated that containing the valve, like Scott's valve 68, in Miller's housing 26 was a well-known option from prior art pump designs that yielded nothing more than predictable results—a Uni-directional Pump Assembly contained in a housing. *See* ¶¶92-96, above.[42]
>
> . . .
>
> [42] *See also* Walker (Ex. 1210), Figs. 20-31; Mogaki (Ex. 1230), Fig. 3B and 7; Grant (Ex. 1231), Figs. 1-7, 11; Fujimoto (Ex. 1245), Figs. 1, 4-6; Gilroy (Ex. 1237), Figs. 8-9.

(*Compare* Appx6143 *with* Red Br. at 40). TWW also misunderstands the purpose for which Dr. Beaman cited the references (Red Br. at 40)—he does not argue that the references should be combined with anything. As reading the paragraph (above)

from Dr. Beaman's report makes clear, the references were cited as examples of a "Uni-directional Pump Assembly contained in a housing," which were a "well-known option," and thus supported his opinion that the skilled artisan would have contained Scott's directional valve 68 within Miller's housing. (Appx6143). TWW distinguishes the references on separate (irrelevant) grounds:

- TWW distinguishes Walker because "the pump and air mattress are separated";
- TWW distinguishes Mogaki because "the pump . . . is contained within the external 'remote controller 68";
- TWW distinguishes Grant because it discloses a "pump that may be connected to an external bladder";
- TWW distinguishes Fujimoto because "the air-mat and device body are connected to each other by means of a wiring cable 2 and a hose bundle 3"; and
- TWW distinguishes Gilroy because "the pump . . . is . . . contained within the external 'controller 35."

(Red Br. at 41–42). None of this addresses whether the references disclose a "Uni-directional Pump Assembly contained in a housing," the point Dr. Beaman makes.

Notably missing from TWW's flawed retelling is any engagement with the Board's mistake regarding Miller's allegedly "preferred location" for the valve. The Board identified the basis of its decision:

> [I]n making our finding, we give weight to Miller locating valve 50 outside of air cell 20 as a preferred location. *Cf. Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018) ("But even if a reference is not found to teach away, its statements regarding

> preferences are relevant to a finding regarding whether a skilled artisan would be motivated to combine that reference with another reference.”).

(Appx332). TWW does not address this portion of the Board’s decision, Intex’s case law (Blue Br. at 37–38), or the statements in the Miller specification that indicate no preference for the valve location (Blue Br. at 36–37). TWW does not dispute that (1) there is no reasoning or comment in Miller for locating the valve 50 outside the housing; and (2) that changing the location of the valve does not compromise the aim or purpose of Miller. Under *Polaris*—which is not addressed, much less distinguished by TWW—the Board’s mistake was error, requiring reversal, or at a minimum, remand.

## <u>REPLY CONCLUSION</u>

In view of the largely unchallenged arguments and authorities in Intex’s principal brief, Intex respectfully requests that the Court reverse or, at minimum, remand the Board’s 873 and 872 Final Written Decisions holding the Challenged Claims patentable.

## CROSS-APPEAL RESPONSE

## REBUTTAL STATEMENT OF THE ISSUES

The issues presented are:

1. Does substantial evidence support the Board's finding in the 870 Decision (No. 20-1149) that all Challenged Claims of the '394 Patent are obvious in view of (1) Wu and Chaffee; and/or (2) Wu and Goldmsith?

2. Does substantial evidence support the Board's finding in the 871 Decision (No. 20-1150) that claims 1–3, 7–12, 16–18, and 22–23 of the '394 Patent are obvious in view of (1) Walker and Chaffee; and/or (2) Walker and Goldsmith?

3. Does substantial evidence support the Board's finding in the 874 Decision (No. 20-1151) that all Challenged Claims of the '394 Patent are obvious in view of (1) Chaffee and Wu; and/or (2) Chaffee, Scott and Pisante?

4. Does substantial evidence support the Board's determination in each of the above Final Written Decisions that the "strong evidence of obviousness" (Appx121; Appx226; Appx495) outweighed TWW's secondary considerations evidence?

# REBUTTAL STATEMENT OF THE CASE

Inflatable products with "built in" pump housings are more than a century old. Petitioners identified several combinations of references that each disclose a "housing built into the inflatable body"—the only limitation in dispute in the cross-appeal. Relying on substantial evidence, including the testimony of both parties' experts, the Board made factual findings as to the scope and content of the prior art, the motivation to combine the prior art, and the weight of the secondary considerations evidence to support the ultimate conclusions that the Challenged Claims are obvious. The Board's Final Written Decisions should, accordingly, be affirmed.

## I. The '394 Patent and Companion Appeals

Briefly, as the cases have been identified as companion cases, it is helpful to place the present appeal (addressing the '394 Patent) in the context of the pending appeals between the parties.

TWW asserted three patents—the '394 Patent, '950 Patent, and '018 Patents—in a series of district court litigations in E.D. Texas. Each patent was the subject of one or more IPRs which have been appealed to this Court. The appeals involve overlapping prior art, similar (but not identical in relevant part) claim limitations, and substantively identical secondary considerations evidence.

Although the parties agree that the patents are "mutually relevant," "because [all three] cover inventions by the same sole inventor, [all three] include an identical Field of Invention, [all three] use many of the same terms . . ., and [all three] issued from co-pending families which cover mutually relevant subject matter" (Appx4052), only the '394 and '950 Patent are related. The '394 and '950 Patent are divisions of the same parent application and share a specification. Accordingly, although TWW refers to Figures 3A through 3D of the '394 Patent as disclosing "one embodiment of the invention" (Red Br. at 8), it is the only relevant embodiment to the '394 Patent. (Appx6795 (electing to proceed with prosecution as to the "disclosed species shown in Figures 3A-3D")).[2] Other divisions, including the '950 Patent, claim other embodiments.

---

[2] Under the headings of "Background" and "Summary of the '394 Patent," TWW makes a number of arguments related to purported commercial success of products alleged to practice the '394 Patent. (Red Br. at 6–7, 10–11). The Board rejected these arguments. (*E.g.*, Appx79 ("Patent Owner has not demonstrated that it is entitled to a presumption of nexus based on its own products practicing the Challenged Claims. We also agree with Petitioners that Patent Owner is not entitled to a presumption of nexus . . . based solely on a product having a 'built-in pump.'"); Appx93-94 ("With respect to Patent Owner's contention that the invention of the '394 patent launched an entire category of airbeds, the evidence of record does not support the contention.")). Intex disagrees with the Red Brief arguments regarding commercial success as addressed *infra*.

## II. Prior Art & Motivations in the Art

TWW's arguments focus on the Chaffee, Goldsmith and Wu references, as well as the Board's findings regarding motivations to combine. Accordingly, a brief review of these key prior art references, as well as the Board's findings regarding design pressures and motivations in the art, is appropriate.

### *A. Chaffee*

Chaffee was filed as U.S. Patent Application No. 09/859,706 on May 17, 2001, published on November 29, 2001, as U.S. 2001/0044969, and issued as U.S. Patent No. 7,039,972 on May 9, 2006. (Appx6939). Chaffee is the primary reference in the 874 Decision combinations and a secondary reference in the 870 and 871 Decisions combined with Wu and Walker, respectively. Chaffee is directed to "an inflatable device with a recessed fluid controller." (Appx6939, Abstract). "Fluid controller 80" is "at least partly positioned within" inflatable bladder 20, meaning it "occupies a portion of the volume that would normally be occupied by the bladder." (Appx6947, 2:60-67; Appx5689 ¶199; Appx5904 ¶195).




Fig. 5

As illustrated in annotated version of Figure 5 relied upon by the Board, above, Chaffee teaches that the fluid controller 80 includes "housing 90 [**orange outline**] that surrounds the inner workings of the pump," including motor 84, impeller 86, valve 122, air intake, and air outlet 120. (Appx34; Appx170; Appx429; Appx6944, Fig. 5; Appx6948, 4:17-19).

Missing from TWW's description of Chaffee is the teaching that flange 82 and the housing 90 may be a single structure—that is, the housing 90 may include "a portion adapted to connect to bladder 20, such as a flange 82 [**orange outline, circled in blue**]," which may "***extend from housing 90 or*** may be a separate component connected to housing 90." (*Compare* Appx6949, 5:5-9 (emphasis added) *with* Red Br. at 12–14). Chaffee also teaches that the flange 82 is connected to the bladder wall with "an adhesive or heat seal." (Appx6948–6949, 4:67-5:7).

### *B. Goldsmith*

Goldsmith is U.S. Patent No. 2,493,067 and issued on January 3,1950. (Appx6952[3]). Goldsmith is a secondary reference in the 870 and 871 Decisions combined with Wu and Walker, respectively. Goldsmith is directed to "improvements in mattresses," specifically providing an inner spring mattress with

[3] TWW cites to Appx6947–6948, but Goldsmith is at Appx6952–6954.

an inner compartment through which air circulates to heat or cool the mattress. (Appx6953, 1:4-12).




In Figure 1, left, Goldsmith discloses "blower unit 29" which is connected to the mattress. In a "modified form," a motor and fan within a "casing" is "mounted or attached to the mattress" and replaces the external blower unit 29. (Appx6954, 4:1-5).

### *C. Wu*

Wu is U.S. Patent No. 6,698,046 and issued on March 2, 2004. (Appx6929). Wu is the primary reference in the 870 Decision, in combination with Chaffee and Goldsmith. Wu is directed to a "system for supplying air and controlling the flow of air into and out of the chambers of a patient supporting air mattress." (Appx6929, Abstract). Air mattress 400 is described as a "low air loss mattress" attached to an electric motor-powered blower 15 with two-position rotary valve 100. (Appx6933, 2:43-48).

### *D. Design Pressures & Motivations in the Art*

The skilled artisan has long been motivated by concerns for spatial efficiency, energy efficiency, and durability in improving inflatable products, including those

with housing-contained pump designs. (*See* Appx58–64 (concluding that skilled artisans were motivated by "improved spatial efficiency" and "increased durability"); Appx191–196 (same); Appx454–461 (concluding that skilled artisans were motivated by "improved energy efficiency" and "durability")). The Board found that the skilled artisan would have been motivated to combine the references in each of the six combinations at issue based on spatial efficiency, durability, and/or energy efficiency concerns.

***Spatial efficiency***—Early inflatable product designs included pumps with components uncontained by any sort of enclosure. (Appx5618–5619 ¶¶90–92; Appx5854–5855 ¶¶90–92; Appx6525–6526 ¶¶90–92). Eventually, however, designs migrated toward more compact designs in which pump components were contained within housings. (Appx5619 ¶92 n.15 (citing, as examples, Appx6983–6986, Figs. 20-31; Appx7231, Fig. 3B; Appx7247–7251, Figs. 1–7, 11); Appx5855 ¶92 n.15 (same); Appx6527 ¶92 n.15 (same)). Such designs were directly associated with the efficient use of space (Appx5620 ¶¶93–94 (citing, as examples, Appx7257, Abstract; Appx7267, 3:19-21); Appx5856 ¶¶93–94 (same); Appx6071 ¶¶93–94 (same)). Indeed, this Court recognized that "numerous references since the late 1800s illustrated prior artisans' intuitive desire to recess pumps to save space." *Intex Recreation Corp. v. Team Worldwide Corp.*, 860 F. App'x 717, 723 (Fed. Cir. 2021).

Chaffee, for example, explains that "the pump [] may be small" and explains that the recessed housing-contained pump design "reduce[s] the opportunity" for the pump "to impact or interfere with the use of the inflatable device," so that, for example "it allows an inflatable standard sized mattress to fit into a standard sized bed frame." (Appx6948, 4:29, 4:50-60; *see also* Appx6947, 1:19 (recognizing that "space is limited" in inflatable products designs); Appx7131, 2:40-45 (describing a recessed housing-contained pump design as "compact" and explaining it facilitates "handling and shipment"); Appx7485, 12:61-63 (describing as "unobtrusive[]" a design that located the pump "within the boundaries of the mattress")).

***Energy Efficiency***—Intex's proposed combinations in the 874 Decision—Chaffe/Wu and Chaffee/Scott/Pisante—involve substituting the reversible pump in Chaffee for a uni-directional pump. (Appx454; Appx516). The skilled artisan recognized that a uni-directional pump was more energy efficient, as it could produce the same amount of volume flow as a reversible pump with a smaller, single direction motor by optimizing the blades of the impeller for the single direction of rotation. (Appx516; Appx6650–6651 ¶¶295-297).

For example, Chaffee teaches that "[t]he pump also may be small and consume as little power as possible. Low power consumption is particularly desirable where the pump is to be powered by batteries, as it may extend battery life." (Appx6948, 4:29–32). Scott expressly teaches that this goal may be

accomplished by using a one-directional pump: "[i]t is a further advantage of the present invention, that the pump efficiency of a one-directional pump is greater than the efficiency of a reversible pump." (Appx7122, 1:54–56).

***Durability***—The skilled artisan has likewise long recognized the benefits of improved durability. U.S. Patent No. 388,037 to Hargin, for example, disclosed an air mattress that could also function as a life raft. (Appx5603–5604 ¶¶57–60; Appx5839–5840 ¶¶57–60; Appx6510–6511 ¶¶57–60). With this design, the mattress was "provided with means for readily inflating it" in the form of a pump "inserted" into and "wholly inclosed [sic] within" one end of the mattress. (Appx7191, Figs. 1–2). Hargin associated this design with enhanced "durability" (Appx7194, 9-14), stating that the pump was protected "from accident, injury, or separation when plunged into water" and used as a life raft. (Appx7195, 127-131; *see also* Appx7196, 18-22).

Housing-contained pumps provide improved durability. Chaffee, for example, discloses that the recessed fluid controller (e.g., pump) "includes a housing 90 that surrounds the inner workings of the pump" so as to "protect the inner workings of the pump[.]" (Appx6948, 4:19-20)). Unsurprisingly, volumes of prior art disclose housing-contained pump designs. (Appx6070 ¶92 n.15 (citing examples).

## SUMMARY OF ARGUMENT

The Challenged Claims of the ’394 Patent are invalid as unpatentable. TWW attempts to reargue the evidence before the Board in the hopes of this Court reaching a different outcome, but TWW fails to establish that the Board’s decisions are unsupported by substantial evidence or in any way legally or procedurally deficient. The Board’s Final Written Decisions should be affirmed.

TWW’s arguments fall into four categories:

***First***, TWW is wrong that Chaffee does not disclose a housing “built into” the inflatable body. The Board’s factual finding is supported by an express teaching in the specification. That Chaffee’s figures do not depict the embodiment where the housing and flange are a single structure is irrelevant; as the Board noted “the ***disclosures*** of Chaffee are not limited to the ***depictions*** in the figures.” (Appx40 (emphasis original); Appx175 (same); Appx435 (same)); s*ee also Duramed Pharms., Inc. v. Watson Labs., Inc.*, 413 F. App’x 289, 294 (Fed. Cir. 2011) (“A reference, however, is prior art for all that it discloses . . . .”)). Likewise, changes to figure numbering during the prosecution of Chaffee to correct “clerical errors” had no impact on the text that teaches that the pump may be “built into” the mattress as claimed. (Appx48).

***Second***, the Board did not err in its construction of the term “inflatable body.” TWW argues that the claimed “inflatable body” must be “substantially airtight.” But

the proposed "substantially airtight" construction is based on claim scope disavowal in the prosecution of the unrelated—albeit directed to similar technology—'018 Patent. TWW notes this crucial detail only in a footnote, cites no precedent holding that claim scope disavowal requirement may extend beyond a patent family, and fails to distinguish the precedent cited by the Board.

***Third***, TWW reargues its commercial success and nexus arguments and asserts that the Board "erred by ignoring significant evidence." But every piece of evidence identified by TWW is cited by the Board; the Board did not ignore any evidence that TWW raised before the Board, TWW simply disagrees with the ultimate decision by the Board.

***Finally***, TWW reargues the motivation to combine for each and every combination considered by the Board, including an argument that Goldsmith is not analogous art. The Board's analysis, however, is supported by substantial evidence including motivations explicitly taught in references and supported by expert testimony.

With the exception of the challenge to the weight the Board accorded the evidence of commercial success, which cuts across each cross-appeal, the Court need not reach every argument raised by TWW to affirm the Board's Final Written Decisions.

The Court can affirm the Board's 870 Decision that all Challenged Claims are disclosed in Wu and Goldsmith if the Court agrees that (1) Goldsmith is analogous art; and (2) the Board correctly declined to apply prosecution history estoppel from an unrelated patent to the construction of "inflatable body." As to the combination of Wu and Chaffee, the Court may affirm if it finds that (1) substantial evidence supports the Board's determination that Chaffee discloses an embodiment where the housing and flange are a single structure; (2) the Board correctly declined to apply prosecution history estoppel from an unrelated patent to the construction of "inflatable body"; and (3) the Board's analysis of the motivation to combine Wu and Chaffee is supported by substantial evidence.

The only challenge raised to the combination of Walker and Goldsmith in the 871 Decision is that Goldsmith is not analogous art. Accordingly, if the Court only agrees that Goldsmith is analogous art, the Court can affirm the Board's 871 Decision holding that claims 1-3, 7-12, 16-18, and 22-23 are disclosed in Walker and Goldsmith. The Court can affirm the Board's 871 Decision that claims 1-3, 7-12, 16-18, and 22-23 are disclosed by the combination of Walker and Chaffee if the Court agrees that (1) substantial evidence supports the Board's determination that Chaffee discloses an embodiment where the housing and flange are a single structure; and (2) the Board was not required to credit TWW's expert's "unconvincing" testimony as to motivation to combine.

The Court can affirm the Board's 874 Decision that all Challenged Claims are disclosed in Chaffee and Wu if the Court agrees that (1) substantial evidence supports the Board's determination that Chaffee discloses an embodiment where the housing and flange are a single structure; (2) the Board correctly declined to apply prosecution history estoppel from an unrelated patent to the construction of "inflatable body"; and (3) the Board's analysis of the motivation to combine Chaffee and Wu is supported by substantial evidence. The Court can affirm the Board's 874 Decision that all Challenged Claims are disclosed by the combination of Chaffee, Scott, and Pisante if the Court agrees that (1) substantial evidence supports the Board's determination that Chaffee discloses an embodiment where the housing and flange are a single structure; and (2) the Board's analysis of the motivation to combine Chaffee, Scott and Pisante is supported by substantial evidence.

## STANDARD OF REVIEW

Obviousness is a legal determination based on subsidiary fact findings. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358–60 (Fed. Cir. 2017). Those subsidiary fact findings—including the Board's determination of what the prior art discloses, the motivation to combine prior art references, and the Board's findings on secondary considerations—will not be overturned unless those findings are not supported by substantial evidence. *In re Urbanski*, 809 F.3d 1237, 1241 (Fed. Cir. 2016); *In re Devlin*, 833 F. App'x 335, 336 (Fed. Cir. 2020); *PGS*

*Geophysical AS v. Iancu*, 891 F.3d 1354, 1363 (Fed. Cir. 2018); *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1021 (Fed. Cir. 2017); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008); *Lingamfelter v. Kappos*, 513 F. App'x 934, 937 (Fed. Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229-30 (1938)). "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Agarwal v. TopGolf Int'l, Inc.*, 813 F. App'x 476, 481 (Fed. Cir. 2020) (quoting *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1357 (Fed. Cir. 2018))

This Court reviews "the Board's claim construction according to the Supreme Court's decision in *Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015)," and where, as here, the Board relied upon extrinsic evidence, the "underlying factual determinations concerning extrinsic evidence [are reviewed] for substantial evidence and the ultimate construction of the claim de novo." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279–80 (Fed. Cir. 2015).

# ARGUMENT

## I. Substantial Evidence Supports the Board's Conclusion that Chaffee Discloses a Housing "Built Into" the Inflatable Body

There is no dispute that Chaffee discloses that flange 82 is "built into" the "inflatable body" via flange wall 83 as claimed in the '394 Patent. (Red Br. at 13 ("Flange 82 provides the connection point to the bladder 20.")). The only dispute is whether Chaffee teaches that flange 82 may "extend from" housing 90—that is, as a single structure with a non-reversible connection—such that the "housing" comprising flange 82, flange wall 83 and housing 90 is "built into" the inflatable body. (Appx34; Appx169; Appx429). The Board credited Chaffee's express teaching on this point (Appx40) and rejected each of the arguments TWW repeats here. This Court should do the same.

### *A. TWW Ignores the Express Chaffee Teachings Credited by the Board*

The Board relied on an express teaching in Chaffee, the "overall context" of the Chaffee reference, and expert testimony to find that Chaffee discloses a "housing built into" the inflatable body as claimed in the '394 Patent. Because the Board's findings are supported by substantial evidence, the Board's findings as to the disclosure of Chaffee in the 870 Decision (Wu/Chaffee), 871 Decision (Walker/Chaffee), and 874 Decision (Chaffee/Wu and Chaffee/Scott/Pisante) should be affirmed.

Chaffee explicitly teaches that "[f]lange 82 may, for example, extend from housing 90 ***or*** may be a separate component connected to housing 90." (Appx6949, 5:7-9 (emphasis added); Appx6950, 7:37-38). The Board credited this disclosure, which explicitly contemplates an embodiment in which housing 90 and flange 82 are part of the same structure (the claimed "housing" of the '394 Patent). (Appx38; Appx173; Appx433). The Board did not rely solely on this teaching, however, but considered the phrase in context, which describes two alternative designs. (*Id.* ("[W]e understand Chaffee to disclose at least two ***different*** embodiments: (1) an embodiment in which flange 82 and housing 90 (as well as wall 83) are different portions of the ***same*** structural component and (2) an embodiment in which flange 82 and housing 90 are separate, but connected, components." (emphasis original)). The Board bolstered this interpretation by crediting the testimony of Intex's expert, Dr. Beaman (*id.*), and by referencing other descriptions contemplating a unitary structure composed of flange 82 and housing 90 (*id.* (citing Appx6949, 5:7-11)).

The Board did not, as TWW argues, "equat[e] 'extend from' with 'built into.'" (Red Br. at 55). Indeed, the Board agreed with TWW that "merely stating that flange 82 'extend[s] from' housing 90 does not, ***by itself***, indicate whether the flange and housing are part of the same structural component or whether they are separate, but connected." (Appx38; Appx173; Appx433). The Board, however, identified additional support: in view of "the context of Chafee overall" and the expert

testimony of Dr. Beaman, the Board found that Chaffee disclosed an "alternative" embodiment where the flange 82 and housing 90 were part of a single structure that was "built into" the inflatable body. (Appx39 (citing Appx8740–8741 ¶43); Appx174 (citing Appx8813 ¶20); Appx434 (citing Appx9036 ¶20)). TWW is, accordingly, wrong that the Board "did not identify" additional support for its conclusion. (Red Br. at 56).

Moreover, the Board additionally relied on Chaffee's teaching that flange 82 (which extends from and is part of housing 90) is connected to the chamber wall with "an adhesive or heat seal" (and, thus, is not detachable) and "recessed" (and, thus, is integrated into the chamber wall) as satisfying the "built into" limitation. (Appx35; Appx170–171; Appx430; Appx6948–6949, 4:67-5:7). This is consistent with the parties' agreed construction of "built into" to mean "integrated into and not detachable (or readily removed) from." (Red Br. at 12).

TWW's arguments regarding Chaffee's figures fail as a matter of law. Indeed, the Board agreed with TWW that Figure 5 disclosed an embodiment where the flange and housing are separate components. (Red Br. at 53–55; Appx40; Appx175; Appx435). But, as the Board held, that is irrelevant to the question of whether Chaffee discloses an additional embodiment that teaches a "housing" that is "built into" the inflatable body. (Appx40 ("[T]he ***disclosures*** of Chaffee are not limited to the ***depictions*** in the figures." (emphasis original)); Appx175 (same); Appx435

(same)). The Board is correct. It simply does not matter whether a disclosure is illustrated in figures or only described in text. *See, e.g.*, *Duramed Pharms.*, 413 F. App'x at 294 ("A reference, however, is prior art for all that it discloses . . . ."); *Software Rts. Archive, LLC v. Facebook, Inc.*, 659 F. App'x 627, 639 (Fed. Cir. 2016) (emphasizing that the board is obliged to "read[ ] the prior art for all that it teaches"). *Cf. Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 960 (Fed. Cir. 2017) ("Patents do not need to include drawings of particular embodiments in order to claim them.").

For example, this Court in *Smith & Nephew, Inc. v. Rea*, 721 F.3d 1371, 1378 (Fed. Cir. 2013), chastised the Board for narrowly interpreting the disclosure of the prior art based on the depiction of the size of a component in figures. Holding that the prior art must be read "for all that it teaches," this Court overturned the Board's conclusion. *Id.* ("Nothing about the Haas reference limits the size of the chamfer or in any way suggests that it could not be made larger than it appears to be in the drawings contained in the Haas reference."). TWW's arguments (Red Br. at 52–55, 57) are contrary to precedent.

TWW's arguments regarding the meaning of "extend" (Red Br. at 57) likewise fail. As the Board held, the use of "or" in Chaffee "indicate that the disclosure that flange 82 may 'extend from' housing 90—which precedes the 'or'—would be understood as different from (i.e., an alternative to) the disclosure that

flange 82 'may be a separate component connected to housing 90'—which follows the 'or.'" (Appx39; Appx173-174; Appx433–434); *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1199–1200 (Fed. Cir. 2013) (the use of a disjunctive "or" in a specification indicates alternatives).

Because the Board's determinations that Chaffee taught a housing "built into" the inflatable body as claimed in the '394 Patent is supported by substantial evidence—an express teaching and the overall context of Chaffee and expert testimony—the Board's Final Written Decisions should be affirmed.

### ***B. TWW's Rehash of Rejected Arguments Related to Chaffee's File History is Unavailing***

TWW's reliance on Chaffee's file history—stemming from Chaffee's underlying application (Appx16277-16850)—does not undermine the Board's decision. The Board—in considering the same arguments TWW repeats here—termed the numeral amendments between the publication and issued figures as "clerical errors." (Appx48; Appx183; Appx444). The Board's finding should be affirmed.

The text of Chaffee always used the numeral "90" to refer to a "housing[] that surrounds the inner workings of the pump" that can "provide a connection between fluid controller 80 and bladder 20" by *e.g.*, flange 82 extending therefrom. (Appx16284, 5:5-8; Appx16285, 6:9-12). This textual disclosure relied upon by the Board ***remained unchanged*** throughout Chaffee's prosecution and issuance, as did

the depiction in Figure 5 illustrating the relationship between housing 90 and flange 82. (*Compare* Appx16285, 6:9-12 *with* Appx6949, 5:7-11). Although at one point Chaffee's Figures 3 and 4 incorrectly labeled flange wall 83 as "90," this was a clerical error that was corrected via amendment. In that amendment, the applicant explained:

> ***It is clear from the specification*** that the reference character ***90 refers to the housing 90*** that surrounds the inner workings of the pump 81, such as the motor (84), impeller (86), conduit (88), solenoid (104), etc., and ***can also serve as a connection between the fluid controller 80 and the bladder 20***.

(Appx16767 (emphases added)). The Board, in rejecting the identical arguments TWW repeats here, evaluated the evidence above to conclude that "[i]n light of the complete record," "one of ordinary skill in the art would have understood housing 90 as a structure that 'surrounds the inner workings of the pump' and can 'provide a connection between fluid controller 80 and bladder 20' by (in one embodiment) flange 82 extending from housing 90 as a different portion of the same structural component." (Appx46–47; Appx181; Appx442).

* * *

Accordingly, the Board's finding in each of the challenged Final Written Decisions that the Chaffee combinations disclose a housing "built into" the inflatable body should be affirmed.

## II. The Board Correctly Construed "Inflatable Body"

In construing "inflatable body," the Board rejected TWW's proposed construction of "a ***substantially airtight*** structure that expands when filled with air or other gases." The Board's construction—"a structure that expands when filled with air or other gases"—is based on intrinsic evidence in the claim language and specification and dictionary definitions. (Appx24; Appx159). The Board rejected TWW's attempt to import a definition of "inflatable body" from the prosecution of the '018 Patent. (Appx23; Appx158). The Board was correct, and the construction should be affirmed.

### *A. The Board's Construction of "Inflatable Body" Is the Broadest Reasonable Construction*

The parties agreed that "inflatable body" was "a structure that expands when filled with air or other gases." (Appx16; Appx151-152). The only dispute was whether there was an additional requirement that the structure be "substantially airtight"—a requirement that does not appear in the claims of the '394 Patent. (Appx17 ("Neither the claim language at issue nor any other language from the claims requires the 'inflatable body' to be substantially airtight."); Appx152 (same)).

There is a "'heavy presumption' that a claim term carries its ordinary and customary meaning." *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014). The Board was obligated to apply the broadest reasonable interpretation of the Challenged Claims, which is "the broadest reasonable meaning of the words in their ordinary usage as they would be understood by one of ordinary

skill in the art, taking into account whatever enlightenment by way of definitions or otherwise that may be afforded by the written description contained in the [patent] specification." *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997).

The Board found that the specification's description of "inflatable" and "inflation"—which were used to refer to the process of filling a structure with air—did not support the addition of a "substantially airtight" requirement. (Appx17; Appx152). In so holding, the Board rejected the identical argument TWW repeats here regarding the air mattress embodiments in the specification.[4] (Red Br. at 64). The Board agreed that the "inflatable product" recited in the preamble—*e.g.*, the overall air mattress—may be airtight. (Appx19; Appx154). The "inflatable product" includes additional structures—check valves, seals, and the pump housing—that serve to make the "inflatable body" airtight. (Appx19–20 (citing Appx582, 3:21-23; Appx559, Fig. 4F; Appx584, 7:27-65; Appx154–155 (same)). TWW did not argue that the preamble "inflatable product" was limiting or that the combinations

---

[4] TWW cites to "*In re Translogic Tech., supra*," but no other citation appears in the Red Brief and no citation to a case including "Translogic" appears in the Table of Authorities. (Red Br. at 64). Without a citation or pin cite, it is unclear what point TWW seeks to make. To the extent, however, that TWW is referring to *In re Translogic Tech., Inc.*, 504 F.3d 1249 (Fed. Cir. 2007), that case supports Intex. There, the Court found that the Board's construction of "coupled to receive" as "capable of receiving" was the broadest reasonable interpretation despite a different construction entered in a companion district court case, much as the Board did here. *Id.* at 1258.

including Goldsmith and Wu did not satisfy the preamble. (Appx19 n.10; Appx154 n.12). There is, accordingly, no conflict between the air mattress embodiments in the ’394 Patent—which are overall “inflatable product”—and the Board’s construction of “inflatable body.” TWW identified no other intrinsuc support for their proposed “substantially airtight” construction. The Board, accordingly, correctly concluded that “we do not view the Specification as supporting Patent Owner’s position that, under the broadest reasonable construction, the recited ‘inflatable body’ must be ‘substantially airtight.’” (Appx21; Appx156); *Deep Green Wireless LLC v. Ooma, Inc.*, 809 F. App’x 804, 808 (Fed. Cir. 2020) (finding the Board’s construction of “incoming data signals” reasonable where “[t]he specification never defines the word ‘incoming,’ nor does it explicitly require that incoming be measured against any particular perspective. And, as explained above, nothing in the claim preamble restricts the data signals to being conveyed in any particular direction, nor does Deep Green argue to the contrary”).

The Board also found that extrinsic evidence supported the construction of “inflatable body” as “a structure that expands when filled with air or other gases.” Specifically, the Board credited two dictionary definitions for “inflated” and “inflatable” that aligned with the use of the same terms in the specification of the ’394 Patent. (Appx24 (citing Appx7524 (defining “inflated” as “[f]illed or distended with air or gas”) and Appx7527 (defining “inflatable” as “able to be

blown up or filled with air or gas")); Appx159 (same)). Notably, TWW does not challenge the Board's reliance on these definitions or the definitions themselves. (Red Br. at 63–66 (not addressing the definitions relied upon by the Board)).

In view of the intrinsic evidence and the—unchallenged—extrinsic evidence, the Board's construction of "inflatable body" as "a structure that expands when filled with air or other gases" is the broadest reasonable construction and should be affirmed. *See, e.g.*, *Deep Green Wireless*, 809 F. App'x at 808 (concluding "[i]n light of the broad language of the claim, . . . it was reasonable for the Board to decline to read in" an additional requirement).

### *B. TWW Cites No Precedent for Its Novel Theory of Prosecution History Disclaimer Expanded to Unrelated Patents*

The source of TWW's proposed "substantially airtight" requirement is a definition of "inflatable body" from the prosecution history of a separate patent. (Red Br. at 65). But the '018 Patent, while directed to similar technology, is not formally related to the '394 Patent. TWW cites no precedent to support its theory that prosecution history disclaimer may be applied to formally unrelated patents and does not distinguish in any way the precedent the Board relied upon to reject the identical argument. (*Id.* n.12).

TWW's argument fails. In construing "inflatable body" in the '018 Patent, this Court held that the construction properly incorporated a "substantially airtight" requirement based on claim scope disavowal during prosecution of ***that*** patent. *Intex*,

860 F. App'x at 722. TWW asserts that the term should be construed the same way in the '394 Patent, but identifies no similar definitional, limiting statement in the prosecution of the '394 Patent or any formally related patent. TWW cites only to the prosecution of the '018 Patent. (Red Br. at 65).

"Prosecution history estoppel can extend from a parent application to subsequent patents in the same lineage, as can a prosecution disclaimer." *Trading Techs. Int'l, Inc. v. Open E Cry*, *LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013) (internal citations omitted); *see also Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 981 (Fed. Cir. 1999) ("We hold that Elkay's surrender of coverage . . . also applies to the feed probe limitation in claim 1 of the '855 patent, based on the formal relationship between the '531 and '855 patents."); *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003) ("[P]rosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications."). Even among related patents, however, the application is not automatic. *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003). TWW cites no precedent for its extraordinary theory that limiting statements during the prosecution of the '018 Patent should be extended to an unrelated patent simply because it is directed to "similar subject matter" and uses the same "inflatable body" claim language. Counsel is unaware of any such support. *See, e.g.*, *Omega Eng'g*, 334 F.3d at 1333 (collecting cases, each of which addresses formally related patents).

Nor does TWW address the legal basis for the Board's decision. The Board cited *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1100, 1104–05 (Fed. Cir. 2002) and *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006). (Appx23; Appx157). TWW's brief does not address either of these cases, much less distinguish the holdings. Nor could it. In *Abbott Laboratories*, this Court declined to extend prosecution history estoppel to a formally unrelated patent, even though the "applications shared common subject matter, a common inventor, and the same assignee." 287 F.3d at 1100, 1104–05. *Abbott Laboratories* directly forecloses TWW's "similar subject matter" argument. (Red Br. at 65 n.12). Likewise, in *Pfizer*, this Court found that statements made during prosecution of foreign counterparts were "irrelevant to claim construction." 457 F.3d at 1290. The Board's legal analyses is both unchallenged and correct.

The Board also distinguished the district court constructions TWW cites. As the Board noted, in E.D. Texas the district court issued a single construction of "inflatable body" for the '018, '394, and '950 Patent based on the prosecution history of the '018 Patent without considering—as precedent requires—the application of prosecution history disavowal to formally unrelated patents. (Appx22-23; Appx156–157). As to the D. Columbia construction, that construction was for a patent related to the '018 Patent—that is, another patent not formally related to the '394 Patent. (Appx23; Appx158).

TWW has shown no error in the Board's construction of "inflatable body."

### *C. Wu Discloses an "Inflatable Body"*

TWW does not dispute that under the Board's construction of "inflatable body," the Wu combinations disclose an "inflatable body." (Red Br. at 67). If the Court agrees with the Board's construction, there is no dispute that each of the Wu combinations disclose an "inflatable body." *St. Jude Med., LLC v. Snyders Heart Valve LLC*, 977 F.3d 1232, 1241–42 (Fed. Cir. 2020) (appellant failed to preserve argument that a limitation was met under an alternative claim construction).

### *D. The Goldsmith Combinations Disclose an "Inflatable Body"*

TWW does dispute whether Goldsmith satisfies the "inflatable body" limitation under the Board's construction. (Red Br. at 67). Neither Petitioners nor the Board, however, relied on Goldsmith as disclosing an "inflatable body." The Board never determined that Goldsmith disclosed an "inflatable body" and thus, could not err by "determining that Goldsmith discloses an inflatable body." (Red Br. at 69).

In the 870 Decision, Wu, not Goldsmith, was relied upon for the "inflatable body" limitation. (Appx109 ("To address the 'inflatable body' limitation for this asserted ground, Petitioners again rely on Wu . . . ."")). As discussed above, TWW does not challenge that Wu discloses an "inflatable body" under the Board's construction. TWW's argument that Goldsmith does not disclose an "inflatable

body" is irrelevant to the Board's decision. *In re Kavanagh*, 851 F. App'x 1028, 1034 (Fed. Cir. 2021) (attacking individual reference's disclosure was insufficient to show error where "the Board explained that the obviousness rejection was based on a combination of the prior art").

Likewise, in the 871 Decision, Walker, not Goldsmith, was relied upon for the "inflatable body" limitation. (Appx241 ("To address the 'inflatable body' and 'fan and motor' limitations for this asserted ground, Petitioners again rely on Walker . . . .")). On appeal, TWW does not challenge that Walker discloses an "inflatable body" under either the Board's construction of "inflatable body" or under the proposed "substantially airtight" construction—nor could they, as the arguments were not raised before the Board. (Appx242 ("Patent Owner does not present arguments for [the "inflatable body" and "fan and motor"] limitations.")). Again, TWW's argument regarding whether Goldsmith discloses an "inflatable body" is irrelevant to the Board's decision. *In re CSP Techs., Inc.*, 840 F. App'x 577, 585 (Fed. Cir. 2021) ("A conclusion of obviousness 'cannot be overcome 'by attacking references individually where the rejection is based upon the teachings of a combination of references.'")

The Board made clear that the proposed combinations did not depend on Goldsmith alone disclosing an "inflatable body":

> Patent Owner contends that because "Goldsmith does not disclose an 'inflatable body[,]' it also cannot disclose a housing that is 'built into' such a body.". . . Patent Owner's arguments are not convincing because they do not address specifically the modification proposed by Petitioners in this asserted ground. As discussed above, in this asserted ground, Petitioners rely on a ***combination*** of Walker and Goldsmith—rather than Goldsmith alone—to satisfy the "built into" limitation.

(Appx243 (emphasis original); Appx111 (same as to Wu and Goldsmith)).

## III. The Board's Secondary Considerations Analysis is Supported by Substantial Evidence

Whether objective indicia support a finding of non-obviousness is a question of fact. *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013); *In re Ethicon, Inc.*, 844 F.3d 1344, 1352 (Fed. Cir. 2017) (substantial evidence supported the Board's determination of how to weigh the evidence of objective indicia). The record contains substantial evidence supporting the Board's multiple pages of fact findings on alleged objective indicia and conclusion that TWW's arguments and evidence did not outweigh the "strong evidence of obviousness." (Appx99; Appx226; Appx495).

On appeal, TWW does not challenge the Board's analysis and conclusions that:

> (1) TWW's claims of alleged copying were "entitled to no weight," (Appx216; Appx484);
>
> (2) TWW's claims of alleged industry skepticism were entitled to "very little weight," (Appx99; Appx226; Appx494);

> (3) TWW's claims of "long-felt need" were entitled to "little weight," (Appx97; Appx224; Appx492);
>
> (4) TWW's claims regarding acceptance, industry praise, and licensing were entitled to "little weight," (Appx95; Appx222; Appx491); and
>
> (5) TWW's claims regarding alleged failure to develop alternatives was entitled to "some weight" but there is only a "limited nexus" between the evidence and the limitations of the '394 Patent, (Appx92; Appx219; Appx487).

TWW's sole challenge is to the Board's evaluation of alleged commercial success. (Red Br. at 69). As the Board found, the alleged evidence of commercial success did not support a finding of non-obviousness. (Appx99; Appx226; Appx495). The Board's findings are supported by substantial evidence and should be affirmed.

### A. *The Board's Findings of No Nexus for TWW's Own Airbeds or all "Built-In Pump" Airbeds is Supported by Substantial Evidence*

All objective indicia of non-obviousness "must be tied to the novel elements of the claim at issue." *Institut Pasteur v. Focarino*, 738 F.3d 1337, 1347 (Fed. Cir. 2013). "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *In re Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011); *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1330 (Fed. Cir. 2017) ("For objective indicia evidence to be accorded substantial weight, . . . a nexus must exist 'between the evidence and the merits of the claimed invention.'"). TWW, as patentee, "bears

the burden of showing that a nexus exists." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019).

TWW failed to establish that much of its alleged commercial success evidence had any nexus with the claims of the '394 Patent. As to TWW's own airbed models, the record evidence shows (and the Board found) that Dr. Stevick failed to "fully analyze any of" TWW's own airbed products. (Appx79; Appx205; Appx473). Dr. Stevick compared different claim limitations of claim 1 against different TWW products; Dr. Stevick opined that one TWW pump—the EZ V AC Dual pump—satisfied three claim limitations and a different TWW pump—the EZ V Auto Shutoff pump—met another. (Appx14916–14917 ¶180 (testimony about EZ V AC Dual pump) *with* Appx14917–14919 ¶¶181, 183 (testimony about EZ V Auto-Shutoff pump)). Nowhere does Dr. Stevick explain similarities or differences between these pumps or otherwise justify his patchwork analysis. Accordingly, there is no basis in the record to find that the commercial success of any TWW Product is tied to the specific features of the asserted claims. *See In re Cree, Inc.*, 818 F.3d 694, 703-04 (Fed. Cir. 2016) (conclusory expert declaration as to commercial success insufficient to support finding of nexus). TWW does not address at all the Board's findings or point to anywhere in the record where Dr. Stevick fully analyzed even one TWW airbed product. Rather, TWW restates its argument before the Board without identifying any error in the Board's analysis. (Red Br. at 71).

Likewise, as to all airbeds on the market with a "built-in pump," the record evidence shows (and the Board found) that TWW was not entitled to a finding of nexus. As the Board found, Dr. Stevick's conclusory testimony—"that he personally reviewed airbed models . . . and they follow the design of TWW's '394 Patent Claims"—was entitled to "little weight" as he did not identify the airbed models he reviewed or provide any analysis of "how the airbeds practiced any of the Challenged Claims of the '394 Patent." (Appx80; Appx205-206; Appx474). TWW does not address the Board's findings or point to anywhere in the record where Dr. Stevick provided the missing basis for his conclusory opinion. Rather, TWW merely restates its argument before the Board, without identifying any error in the Board's analysis. (Red Br. at 73, 75).

Dr. Stevick's "analysis"—that all built-in pumps on the market practice the '394 Patent—is particularly problematic when compared to the identical analyses (and conclusions) presented in the '018 and '950 Patent IPRs. Each patent—although admittedly similar—is directed to a different set of claim limitations, but Dr. Stevick's analysis does not differentiate. For example, Dr. Stevick identically opined that he "personally reviewed airbed models . . . and they follow the design of the TWW '018 Patent." (Appx10116 ¶166). No explanation is provided to differentiate between the "claimed, novel features" of the '018 Patent and the "claimed, novel features" of the '394 Patent. (*Compare id. with* Appx18893 ¶216);

*Fox Factory*, 944 F.3d at 1378 ("The same evidence of secondary considerations cannot be presumed to be attributable to two different combinations of features.").

### *B. The Board's Finding that the Commercial Success is Not Due to the Patented Features is Supported by Substantial Evidence*

The Board found that a nexus did exist for certain products for which infringement of the '394 Patent was stipulated, but that "the nexus between these sales and the claimed product features, however, is weak." (Appx84; Appx210; Appx478-479). For support, the Board relied upon record evidence tying the commercial success of airbed sales to features unclaimed in the '394 Patent. Specifically, the Board cited to extensive customer survey data establishing that comfort, durability, mattress height, and ease of use "contribute more significantly to the sales of airbeds . . . than a built-in pump," much less the specific built-in pump with a moveable air conduit claimed in the '394 Patent. (Appx85–86; Appx211-212; Appx480). The Board also relied upon data and expert testimony establishing that between 2011 and 2018, airbeds without built-in pumps outsold airbeds with built-in pumps by a Ratio [redacted] ratio. (Appx87 (citing (Appx11493–11494 ¶52); Appx213; Appx481). The Board concluded that based on this data, "customers' purchases are driven, at least in part, by factors other than whether an airbed has a built-in pump with a movable air conduit," as claimed in the '394 Patent. (Appx87; Appx213; Appx481). As the Board noted, this conclusion is consistent with the decision in an arbitration between the parties, where the arbitrator "conclu[ded] that it is the

consumer demand for comfort and durability that drives the demand for premium airbeds"—not whether an airbed includes a built-in pump. (Appx88 (citing Appx20373); Appx213; Appx482).

Further, the Board relied upon testimony of TWW's own experts in finding the nexus "weak." (Appx87 (citing Appx9558, 372:3–14 (referring to one of the aforementioned consumer surveys, Dr. Stevick testified "Q: So when you get to pump is built in, as far as the ranking, that is behind durability, comfort, won't leak air, price, size, and whether a pump is included in the box. . . . Do you agree with this ranking . . .? A: I believe if you took a survey, this is probably what people would say.")) Appx86 (citing Appx11223, 34:19–21 (Dr. Becker testifying "I would agree that . . . comfort and durability are important characteristics in consumer demand."))).

### *C. The Board Did Not "Ignore" Properly Presented Evidence*

TWW argues that the Board "ignore[ed] significant evidence of commercial success." (Red Br. at 70). But the evidence cited by TWW—exclusively testimony provided by Dr. Stevick—was considered by the Board, to the extent properly raised by TWW. Moreover, Dr. Stevick is a technical expert and not an expert on commercial success. The Board was not required to credit Dr. Stevick's largely conclusory opinions which were not "tied to the novel elements of the claim at issue." *Institut Pasteur*, 738 F.3d at 1347; *In re Huang*, 100 F.3d 135, 140 (Fed. Cir.

1996) ("Huang's . . . conclusory assertion that, in his opinion, the sales . . . derive from the [claimed features] . . . is insufficient. . . . the applicant must submit some factual evidence . . . for example, an affidavit from the purchaser explaining that the product was purchased due to the claimed features."); *Cree*, 818 F.3d at 703-04 (conclusory expert declaration that the success of the product is due to the claimed invention is insufficient).

As to gross revenue data, TWW acknowledges that the Board expressly considered this evidence. (Red Br. at 72). The Board's fact findings on this data are well supported. The Board found that the gross revenue data TWW submitted—from a single retailer and without data on market share, or an explanation as to why a single retailer's data was reflective of the market as a whole—was "considerable and entitled to some weight," but that the weight accorded to that evidence was decreased because "the lack of overall market share data cuts against the Retailer sales data." (Appx88 (citing *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1360–61 (Fed. Cir. 1999)); *see also Huang*, 100 F.3d at 140 ("evidence related solely to the number of units sold provides a very weak showing of commercial success, if any."); *In re Applied Materials, Inc.*, 692 F.3d 1289, 1300 (Fed. Cir. 2012) ("[P]robative evidence of commercial success relates to whether the sales represent 'a substantial quantity in th[e] market' . . . [j]ust as the number of units sold . . . is only weak evidence . . . so too is an assertion of market share lacking in sales data."). The

Board's consideration of the totality of the record evidence was not error. The Board placed the raw revenue data in context—that is, the Board looked to the totality of the record evidence to determine "whether the sales represent 'a substantial quantity in th[e] market,'" *Applied Materials*, 692 F.3d at 1300. The Board's finding that the gross revenue data was undermined by the totality of the evidence—including evidence of sales of airbeds without built-in pumps vastly outstripping sales of airbeds practicing the '394 Patent—was not error. (Appx87 (citing (Appx11493–11494 ¶52); Appx213; Appx481).

As to allegedly "comparable" models (Red Br. at 73[5]), Dr. Stevick's conclusory analysis falls within the category of testimony the Board rejected because "he does not provide any of the underlying analyses for his opinion . . . including which airbed models he reviewed or how the airbeds practiced any of the Challenged Claims of the '394 Patent." (Appx80; Appx205; Appx474). Dr. Stevick's entire opinion as to "comparable models" is:

> For example, Intex offers different airbed designs that are comparable except for the patented inflate/deflate built-in electric design. Thus, it

---

[5] TWW cites to portions of Dr. Stevick's declarations in IPR2018-00859 (Appx10125), IPR2018-00875 (Appx11108), IPR2018-00872 (Appx14027–14028, Appx18288), and IPR2018-00873 (Appx18604–18605), proceedings which are not at issue. The citations are irrelevant. TWW also cites to duplicative copies of Dr. Stevick's declarations in IPR2018-00870 (Appx14942–14943 and Appx13081–13082) and IPR2018-00871 (Appx17965–17966 and Appx10306). Intex addresses only one copy of each.

> is possible to isolate the design of the patent claims to determine if they have independent value and therefore nexus to secondary considerations such as commercial success and others. They do.

(Appx13081–13082 ¶228; 10306 ¶208 (same); Appx18907 ¶228 (same)). Dr. Stevick does not identify the "models he reviewed or how the airbeds practiced any of the Challenged Claims of the '394 Patent." (Appx80; Appx205; Appx474). There is no error in the Board's determination that such conclusory testimony did not demonstrate a nexus. Moreover, that the Board did not directly address this paragraph in Dr. Stevick's declaration is not surprising, as TWW's only citation to this argument and testimony appears as an undifferentiated part of bulk citations. (*See, e.g.*, Appx1070 (briefing from IPR 2018-00870 addressing ¶228 of Dr. Stevick's declaration only within a citation to 11 paragraphs of his declaration); *id.* (including ¶228 only within a citation to 51 paragraphs); *id.* (including ¶228 only within a citation to 76 paragraphs); Appx1071 (including ¶228 only within a citation to 80 paragraphs)). The Board did not ignore an argument or evidence; TWW simply did not raise a "meaningful challenge." S*ee, e.g.*, *Novartis*, 853 F.3d at 1326 n.2 (in the context of a motion to exclude before the Board, "one long string cite, based on one conclusory sentence" is "far from sufficient to raise a meaningful challenge . . . let alone to sensitize the Board to the complained-of" issue and that "[t]his superficial treatment amounts to little more than a request that the Board peruse the cited evidence and piece together a coherent argument on Novartis' behalf").

The same is true of the deposition testimony from commercial buyers regarding the alleged price premium consumers are willing to pay for built-in pumps. (Red Br. at 73). Dr. Stevick's opinion is premised on the assumption—which the Board rejected for lack of "underlying analyses," (Appx80; Appx205; Appx474)—that all built-in pumps on the marketplace infringe the '394 Patent. Moreover, Dr. Stevick's discussion of the commercial buyer's deposition testimony was not addressed by TWW except in undifferentiated bulk citations. (*See, e.g.*, Appx1070 (briefing from IPR2018-00870 addressing ¶228 of Dr. Stevick's declaration only within a citation to 11 paragraphs of his declaration); *id.* (addressing ¶228 only within a citation to 51 paragraphs); *id.* (addressing ¶228 only within a citation to 76 paragraphs); Appx1071 (addressing ¶228 only within a citation to 80 paragraphs)). Again, the Board's rejection of Dr. Stevick's testimony for lack of analyses or the Board's focus on the arguments TWW actually raised is not error.

Likewise, TWW did not "meaningfully" raise Dr. Stevick's opinion that Intex stopped selling a prior pump design or Dr. Stevick's opinion regarding an email between a customer and Intex. (Red Br. at 74). TWW did not cite to the portion of Dr. Stevick's report regarding the prior pump design except as an undifferentiated part of 76-paragraph and 80-paragraph string cites. (*See, e.g.*, Appx1070 (briefing from IPR2018-00870 addressing ¶235 only within a citation to 76 paragraphs of his declaration); Appx1071 (addressing ¶235 only within a citation to 80 paragraphs).

Likewise, as to communications between a customer and Intex, again, TWW only addressed Dr. Stevick's testimony as part of undifferentiated string cites. (*See, e.g.*, Appx1070 (briefing from IPR2018-00870 addressing ¶222 of Dr. Stevick's declaration only within a citation to 11 paragraphs); *id.* (addressing ¶222 only within a citation to 51 paragraphs); *id.* (addressing ¶222 only within a citation to 76 paragraphs); Appx1071 (addressing ¶222 only within a citation to 80 paragraphs)). "This superficial treatment amounts to little more than a request that the Board peruse the cited evidence and piece together a coherent argument on [TWW's] behalf." *Novartis AG*, 853 F.3d at 1326 n.2.

TWW's true challenge to the Board's commercial success analysis is not that the Board ignored evidence, but that TWW disagrees with how the Board weighed the evidence. As this Court has recognized, however:

> "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." The simple fact that some contradictory evidence exists in the record does not demonstrate that the Board's findings are unsupported by substantial evidence. *Id.*

*Agarwal*, 813 F. App'x 476 at 481 (internal citation omitted). The Board's evaluation of commercial success was thorough and well-reasoned and should, accordingly, be affirmed.

## IV. The Board's Finding of a Motivation to Combine Each of the Combinations is Supported by Substantial Evidence

In a scattershot and conclusory approach, TWW challenges the Board's finding of a motivation to combine each combination considered by the Board. TWW does not challenge any of the design motivations in the art upon which the Board relied—including compactness, durability, and electrical efficiency—but rather re-raises arguments the Board already rejected. The Court should reject TWW's arguments and affirm the Board's findings on motivation.

### *A. The Board's Finding of a Motivation to Combine Wu and Chaffee is Supported by Substantial Evidence*

TWW does not dispute the Board's findings that a skilled artisan would be motivated to combine Wu and Chaffee to achieve "improved spatial efficiency" and "increased durability." (Appx58–64). The Board's motivation to combine analysis is, therefore, supported by unchallenged substantial evidence.

TWW's overheating argument—repeated here (Red Br. at 76)—was rejected by the Board as "unsupported," "without evidence," and "conflicts with Dr. Stevick's deposition testimony." (Appx69). Indeed, Dr. Stevick unequivocally testified at deposition that heat "wouldn't be an issue." (Appx8141, 460:4-10); *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1375 (Fed. Cir. 2020) ("[C]onclusory expert testimony and attorney argument cannot constitute substantial evidence."); *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence.").

TWW does not identify any error in the Board's motivation to combine finding, but rather simply points to other (rejected) evidence and arguments that it asserts support the opposite conclusion. But "[i]f two inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB's] decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys*, 881 F.3d at 1356 (internal quotations omitted). The Board's finding that a skilled artisan would be motivated to combine Wu and Chaffee should be affirmed.

### *B. The Board's Finding of a Motivation to Combine Wu and Goldsmith is Supported by Substantial Evidence*

TWW does not dispute the Board's findings that a skilled artisan would be motivated to combine Wu and Goldsmith to achieve "improved spatial efficiency" and "increased durability." (Appx120–121). The Board's motivation to combine analysis is, therefore, supported by unchallenged substantial evidence.

TWW's non-analogous art argument—repeated here (Red Br. at 78)—was rejected by the Board in view of the problem the '394 Patent sought to resolve. The Board agreed with TWW that Goldsmith, as a modified conventional inner spring mattress, was not within the same field of endeavor as the '394 Patent. (Appx117). Goldsmith was, however, "reasonably pertinent" to a problem the '394 Patent sought to solve: providing a built-in pump to eliminate the need for an external pump. (Appx118 (citing Appx6953, 1:20-27)). Goldsmith, the Board found, directly speaks

to solving this problem, as it teaches that in the relied-upon embodiment, "no outside [blower] unit is necessary." (Appx118 (citing Appx6954, 4:11-12)). TWW's argument that "Goldsmith discloses a much different device than Chaffee" (Red Br. at 78) is irrelevant to whether a skilled artisan would have combined ***Wu*** and Goldsmith.

Moreover, this Court found that the same Goldsmith reference, combined with Parienti, made out a prima facie case of obviousness against the '018 Patent, which is directed, as TWW notes, to "similar subject matter" as the '394 Patent. (Red Br. at 65 n.12). Although the question of whether Goldsmith was analogous art was not directly at issue, this Court noted that Goldsmith was part of the "volumes of prior art" teaching recessed pump designs and found that Intex satisfied its burden of proving obviousness. *Intex*, 860 F. App'x at 723.

TWW does not challenge the Board's identification of the problem the '394 Patent sought to solve, or distinguish the evidence or precedent cited by the Board. The Board's finding that a skilled artisan would be motivated to combine Wu and Goldsmith should be affirmed.

### *C. The Board's Finding of a Motivation to Combine Walker and Chaffee is Supported by Substantial Evidence*

The Board found that a skilled artisan would be motivated to combine Walker and Chaffee to achieve "spatial efficiency" and "durability." (Appx196). The Board rejected the identical arguments TWW repeats here (Red Br. at 79), based on the

testimony of Intex's expert Dr. Beaman, whose testimony the Board found to be "consistent with the underlying information and analysis." (Appx199). The Board rejected Dr. Stevick's opinions—the same opinions TWW cites here—as "unconvincing" because "Dr. Stevick merely restates [TWW's] arguments with no additional facts or data." (Appx197–198). Dr. Stevick's testimony is not "substantial evidence." *Acoustic Tech.*, 949 F.3d at 1375 ("[C]onclusory expert testimony and attorney argument cannot constitute substantial evidence."); *TQ Delta*, 942 F.3d at 1358 (same).

TWW has not identified anything other than Dr. Stevick's unsupported, conclusory testimony, which is not substantial evidence. The Board's finding that a skilled artisan would be motivated to combine Walker and Chaffee should be affirmed.

### *D. The Board's Finding of a Motivation to Combine Walker and Goldsmith is Supported by Substantial Evidence*

TWW does not dispute the Board's findings that a skilled artisan would be motivated to combine Walker and Goldsmith to achieve "improved spatial efficiency" and "increased durability." (Appx251). The Board's motivation to combine analysis is, therefore, supported by unchallenged substantial evidence.

TWW's non-analogous art argument—identical to that for the Wu and Goldsmith combination (Red Br. at 81)—should be rejected for the same reasons as explained in Section IV.B. TWW's argument that "Goldsmith discloses a much

different device than Chaffee" (Red Br. at 81) is irrelevant to whether a skilled artisan would have combined ***Walker*** and Goldsmith.

TWW does not challenge the Board's identification of the problem the '394 Patent sought to solve, or distinguish the evidence or precedent cited by the Board. The Board's finding that a skilled artisan would be motivated to combine Walker and Goldsmith should be affirmed.

### *E. The Board's Finding of a Motivation to Combine Chaffee and Wu is Supported by Substantial Evidence*

The Board did not find that a person of skill would be motivated to modify Chaffee and Wu—as asserted in IPR2018-00874—for the same reasons as the combination of Wu and Chaffee in IPR2018-00870; TWW is simply wrong. (Red Br. at 82). The combination of Chaffee and Wu was a different proposed modification, and the Board relied on a different set of motivations. Specifically, the proposed combinations in the 874 Decision—Chaffe/Wu and Chaffee/Scott/Pisante—involved substituting the reversible pump in Chaffee for a uni-directional pump. (Appx454; Appx516). As recognized by the Board, the skilled artisan recognized that a uni-directional pump was more energy efficient, as it could produce the same amount of volume flow as a reversible pump with a smaller, single direction motor by optimizing the blades of the impeller for the single direction of rotation. (Appx516; Appx6650–6651 ¶¶295-297). The Board concluded that energy efficiency—not durability or spatial efficiency—supported the motivation to

combine Chaffee and Wu as asserted in the 874 Decision. TWW does not dispute the Board's findings that a skilled artisan would be motivated to combine Chaffee and Wu as asserted to achieve increased energy efficiency. (Appx455). The Board's motivation to combine analysis is, therefore, supported by unchallenged substantial evidence.

TWW restates the same arguments the Board rejected, including an improper attempt to incorporate its briefing before the Board, in contravention of the Rules of this Court. (Red Br. at 83 ("As discussed in Patent Owner's Response, . . . .")).

TWW does not identify any error in the Board's motivation to combine finding or challenge the identified energy efficiency motivation, but rather points to other (rejected) evidence and arguments that it asserts support the opposite conclusion. But "[i]f two inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB's] decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys*, 881 F.3d at 1356 (internal quotations omitted). The Board's finding that a skilled artisan would be motivated to combine Chaffee and Wu should be affirmed.

### ***F. The Board's Finding of a Motivation to Combine Chaffee, Scott, and Pisante is Supported by Substantial Evidence***

In challenging the Board's motivation to combine analysis for Chaffee, Scott and Pisante, TWW blatantly misstates the record. TWW states "Petitioners' expert,

Dr. Beaman, stated that a 'POSA would never be motivated to make such a convoluted modification/combination.'" (Red Br. at 84) (citing Appx005175, Appx006649-006653)). Dr. Beaman ***never made*** any such statement. The statement, in fact, comes from TWW's own briefing before the Board. (Appx5175 (TWW's Patent Owner Response)). In addition to the misrepresentation, TWW's reference to its own briefing before the Board is inappropriate. G*emtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("[U]nsworn attorney argument . . . is not evidence and cannot rebut . . . other admitted evidence.").

The Board also rejected TWW's "hindsight" argument—repeated here—asserting that "Patent Owner's assertion is essentially a rewording of the argument regarding the alleged lack of a reason to modify." (Appx524 (citing *Cree*, 818 F.3d at 702 n.3 (noting an argument regarding "impermissible hindsight" is "essentially a repackaging of the argument that there was insufficient evidence of a motivation to combine the references")).

Finally, TWW's argument regarding the lack of an explicit teaching of energy efficiency by use of a uni-directional pump (i.e., by optimizing the blades of an impeller) in the references is confusing (Red Br. at 85). TWW argues that the Board erred by adopting "Petitioners' statement," but it was TWW's expert, Dr. Stevick, who made the statement ultimately adopted by the Board: "[I]t is true that by optimizing the impeller for one direction of rotation a smaller motor could be used

to achieve a given air pressure and volume flow." (Appx18868 ¶156; Appx520). The Board did not rely on "Petitioner's statement," but rather credited TWW's own expert's word-for-word opinion. Such reliance does not constitute reversible error.

* * *

Because TWW has failed to show any error in the Board's motivation to combine analyses, each of the Final Written Decisions should be affirmed.

## CROSS-APPEAL CONCLUSION

For the foregoing reasons, Intex respectfully requests that the Court affirm the Board's 870, 871 and 874 Final Written Decisions finding the Challenged Claims unpatentable as obvious.

Respectfully submitted,

*/s/ Bethany N. Mihalik*

R. Trevor Carter
Andrew M. McCoy
Reid E. Dodge
Bethany N. Mihalik
FAEGRE DRINKER BIDDLE & REATH LLP

300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
Tel: 317-237-0300
Fax: 317-237-1000
E-mail: trevor.carter@faegrebd.com
E-mail: andrew.mccoy@faegrebd.com
E-mail: reid.dodge@faegrebd.com

1500 K Street, N.W., Suite 1100
Washington, D.C. 20005
Tel: 202-230-5000
Fax: 202-842-8465
E-mail: bethany.mihalik@faegredrinker.com

*Counsel for Appellant Intex Recreation Corp.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to FED. R. APP. P. 32(g) and FED. CIR. R. 32(b)(3), I certify that this brief complies with the type-volume limitation of FED. CIR. R. 28.1(b)(1). The brief contains 13,989 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f)) and FED. CIR. R. 32(b)(2), as calculated by Microsoft Word 2010, the word processing system used in its preparation.

I further certify that this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 Point Times New Roman font.

Date: October 5, 2022

*/s/ Bethany N. Mihalik*
Bethany N. Mihalik

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 20-1141, 20-1142, 20-1143, 20-1149, 20-1150, 20-1151

**Short Case Caption:** Intex Recreation Corp. v. Team Worldwide Corporation

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 2 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 10/05/2022

Signature: /s/ Bethany N. Mihalik

Name: Bethany N. Mihalik