NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**INTEX RECREATION CORP.,**
*Appellant*

**BESTWAY (USA), INC.,**
*Appellee*

**v.**

**TEAM WORLDWIDE CORPORATION,**
*Cross-Appellant*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2020-1141, 2020-1142, 2020-1143, 2020-1149, 2020-1150, 2020-1151

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2018-00870, IPR2018-00871, IPR2018-00872, IPR2018-00873, IPR2018-00874.

---

Decided: October 23, 2023

---

R. TREVOR CARTER, Faegre Drinker Biddle & Reath LLP, Indianapolis, IN, argued for appellant and appellee. Appellant Intex Recreation Crop. also represented by REID E. DODGE, ANDREW M. MCCOY.

JOHN S. ARTZ, Dickinson Wright PLLC, Ann Arbor, MI, for appellee. Also represented by STEVEN A. CALOIARO, Reno, NV.

ROBERT M. HARKINS, JR., Cherian LLP, Berkeley, CA, argued for cross-appellant. Also represented by TIMOTHY E. BIANCHI, Schwegman Lundberg & Woessner, PA, Minneapolis, MN.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor. Also represented by DANIEL KAZHDAN, FARHEENA YASMEEN RASHEED.

---

Before LOURIE, DYK, and TARANTO, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Intex Recreational Corporation ("Intex") appeals from two decisions of the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("the Board") holding that claims 1–12 and 16–23 of U.S. Patent 7,246,394 were not shown to have been unpatentable as obvious. *Intex Recreational Corp. v. Team Worldwide Corp.*, No. IPR2018-00872 (P.T.A.B. Sept. 11, 2019), J.A. 274–346 ("872 *Decision*"); *Intex Recreational Corp. v. Team Worldwide Corp.*, No. IPR2018-00873 (P.T.A.B. Oct. 18, 2019), J.A. 347–406 ("873 *Decision*").

Team Worldwide Corporation ("Team Worldwide") cross-appeals from three Board decisions holding that the same claims, or a subset thereof, were shown to have been

unpatentable as obvious. *Intex Recreational Corp. v. Team Worldwide Corp.*, No. IPR2018-00870 (P.T.A.B. Sept. 12, 2019), J.A. 5–139 ("870 *Decision*"); *Intex Recreational Corp. v. Team Worldwide Corp.*, No. IPR2018-00871 (P.T.A.B. Sept. 12, 2019), J.A. 140–273 ("871 *Decision*"); *Intex Recreational Corp. v. Team Worldwide Corp.*, No. IPR2018-00874 (P.T.A.B. Oct. 25, 2019), J.A. 407–545 ("874 *Decision*").

For the following reasons, we *affirm* the Board's holding in its 874 Decision, raised on cross-appeal by Team Worldwide, that the challenged claims in the '394 patent were shown to have been obvious in view of U.S. Patents 7,039,972 ("Chaffee") and 6,698,046 ("Wu"). Because of that affirmance, we do not address the Board's other holdings raised on cross-appeal by Team Worldwide, or those appealed by Intex. The disposition in the 874 decision regarding the '394 claims invalidates all the claims at issue.

## BACKGROUND

This appeal pertains to five *inter partes* reviews ("IPRs") in which Intex challenged claims 1–12 and 16–23 of the '394 patent. The '394 patent is directed to an inflatable product, like an air mattress, with a built-in pump. Representative claim 1 is presented below.

> 1. An inflatable product including:
>
> an inflatable body;
>
> a fan and motor assembly for pumping air;
>
> a *housing built into the inflatable body*, the housing having an interior region; and
>
> an air conduit disposed at least in part in the housing, the air conduit being movable between a first position and a second position while remaining disposed at least in part in the housing, the fan and motor inflating the inflatable body when the air conduit is in the

> first position, and deflating the inflatable body when the air conduit is in the second position;
>
> wherein air flows between the interior region of the housing and the inflatable body during inflation and deflation.

'394 patent, col. 8 ll. 24–39 (emphasis added).

As outlined in the table below, Intex asserted various combinations of ten references across its five petitions, yielding sixteen different obviousness grounds.

| IPR | Relevant to: | List of All Asserted References | Claims Found Unpatentable |
|---|---|---|---|
| **2018-00870** | Cross-Appeal | Wu, Chaffee, Goldsmith[1], Parienti[2] | 1–12, 16–23 |
| **2018-00871** | Cross-Appeal | Walker[3], Chaffee, Goldsmith, Parienti, Basic Pneumatics[4] | 1–3, 7–12, 16–18, 22, 23 |
| **2018-00872** | Appeal | Miller[5], Scott[6], Wu, Pisante[7] | None |

[1] U.S. Patent 2,493,067.

[2] U.S. Patent 6,018,960.

[3] U.S. Patent 4,890,344.

[4] SMC Pneumatics, Inc., *Basic Pneumatics* (Part # SMCT-P1-TX).

[5] U.S. Patent 5,529,377.

[6] U.S. Patent 4,938,528.

[7] FR Patent 2,583,825.

| | | | |
|---|---|---|---|
| **2018-00873** | Appeal | Parienti, Renz[8], Wu | None |
| **2018-00874** | Cross-Appeal | Chaffee, Wu, Scott, Pisante | 1–12, 16–23 |

In its 872 and 873 Decisions, the Board found that Intex had not established the unpatentability of the challenged claims. Intex appealed those determinations.

In the 870 and 874 Decisions, the Board found that Intex *had* established the unpatentability of each of the challenged claims. In its 871 Decision, the Board further held that Intex had established the unpatentability of a subset of those claims. Team Worldwide cross-appealed from those determinations. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## DISCUSSION

We review the Board's legal determinations *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Team Worldwide raises two main issues relevant to our resolution on appeal. It contends that the Board erred by: (1) determining that Chaffee and Wu combined to render obvious the claimed housing "built into" the inflatable body and (2) finding that the secondary considerations of nonobviousness submitted by Team Worldwide were insufficient to overcome Intex's *prima facie* case. We address each argument in turn.

[8] EP Patent 0275896.

I.

Team Worldwide contends that the Board erred in multiple instances when determining that Chaffee and Wu would have rendered the challenged claims obvious.

Team Worldwide focuses primarily on the "built into" limitation of the claims, which the Board construed to mean "integrated into and not detachable from." Cross-Appellant's Br. at 50–58; *874 Decision* at 11–12; J.A. 417–18. In particular, Team Worldwide asserts that the Board erred in "finding that the fluid controller of Chaffee is integrated into and non-detachable from the inflatable body and thus 'built into' as required by claims 1 and 16." Cross-Appellant's Br. at 50. But that misstates the claims as well as the Board's inquiry. The claims require "a *housing* built into the inflatable body." *See* '394 patent, col. 8 ll. 24–39 (emphasis added). They do not require that the entire pump, including the components disposed therein, be non-detachable. The Board thus did not hold that the components of Chaffee's fluid controller pump, which includes not only the housing, but also, *e.g.*, the motor and impeller, is taught to be non-detachable. It held only that Chaffee's fluid controller *housing*, which consists of flange 82, flange wall 83, and housing 90, is built into the inflatable body. *874 Decision* at 23–29; J.A. 429–35; *see also 874 Decision* at 36 ("In light of the complete record, we find that one of ordinary skill in the art would have understood housing 90 as a structure that 'surrounds the inner workings of the pump' and can 'provide a connection between fluid controller 80 and bladder 20' by (in one embodiment) flange 82 extending from housing 90 as a different portion of the same structural component"); J.A. 442.

There appears to be no dispute that Chaffee's flange 82 is built into the inflatable body. The dispute instead lies in whether Chaffee's housing 90 is part of that flange structure or is instead, a different, detachable component of the pump. As the Board explained, "we understand Chaffee to

disclose at least two *different* embodiments: (1) an embodiment in which flange 82 and housing 90 (as well as wall 83) are different portions of the *same* structural component and (2) an embodiment in which flange 82 and housing 90 are separate, but connected, components." *874 Decision* at 27 (emphases in original); J.A. 433. It is that first embodiment that Intex relied upon in challenging the '394 patent claims, and upon which the Board rested its obviousness determination.

To support its obviousness determination, the Board identified language in Chaffee teaching that "[f]lange 82 may, for example, extend from housing 90 or may be a separate component connected to housing 90." J.A. 6949, col. 5 ll. 7–9. The Board held that the phrase "flange 82 may extend from housing 90" "does not, by itself, indicate whether the flange and housing are part of the same structural component or whether they are separate, but connected." *874 Decision* at 27–28; J.A. 433–34. However, the Board found that "[i]n context," a skilled artisan would have understood Chaffee to disclose a first embodiment in which the flange and housing are part of the same structure, which is then built into the inflatable body. *847 Decision* at 27–28; J.A. 433–34. That holding was supported by substantial evidence. In particular, we agree with the Board that the disjunctive "or" in the description of how the flange "may extend from housing 90 *or* may be a separate component connected to housing 90," provides support that Chaffee teaches an embodiment in which the flange and housing are part of the same structural component. The portions of Chaffee to which Team Worldwide points in opposition do not undermine that holding. *Velander v. Garner*, 348 F.3d 1359, 1378–79 (Fed. Cir. 2003) ("If the evidence will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative.").

Team Worldwide also asserts that "[a]s discussed in Patent Owner's Response, a [person of ordinary skill in the art] would not seek to combine Chaffee with Wu for multiple reasons including that of different pump types, different pump usages, lack of spatial efficiency, lack of increased energy efficiency, lack of decreased costs, lack of decreased weight, and that any such combination is not a simple substitution." Cross-Appellant's Br. at 83. That conclusory assertion attempting to incorporate by reference a portion of its Patent Owner Response is a violation of Federal Rule of Appellate Procedure 28(a)(6), and otherwise substantively insufficient to challenge the Board's holding. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335, 1341 (Fed. Cir. 2006) (citing *Graphic Controls Corp. v. Utah Med. Prods., Inc.* 149 F.3d 1382, 1385 (Fed. Cir. 1998)).

Team Worldwide further contends that the "Board erred in concluding that a [person of ordinary skill in the art] would have been motivated to modify Chaffee based on Wu for the same reasons as the discussion above for Wu and Chaffee." Cross-Appellant's Br. at 81. But the adopted rationales to combine those two references were different, depending on whether Chaffee or Wu was relied upon as the primary reference. In the 870 IPR, the Board held that a skilled artisan would have been motivated to combine Wu with Chaffee for durability and spatial efficiency reasons. *870 Decision* at 51–70; J.A. 55–74. But in the 874 IPR, the obviousness challenge involved modifying Chaffee in view of Wu's uni-directional pump, and the Board found a motivation to combine based on Wu's pump being more energy efficient than the pump taught by Chaffee. *874 Decision* at 47–62; J.A. 453–68. Other than mentioning energy efficiency in its conclusory assertion tethered to its Patent Owner Response, Team Worldwide does not address that holding. Team Worldwide's arguments regarding durability and spatial efficiency, as well as its assertions that the mattress in Wu required more air flow than the mattress

in Chaffee, are insufficient to undermine the Board's motivation to combine holding in the 874 Decision based on energy efficiency.

Team Worldwide provides no other substantive argument challenging Intex's *prima facie* case that Chaffee and Wu would have rendered the challenged claims obvious.[9] We therefore affirm the Board's determination that Intex established by a preponderance of the evidence a *prima facie* showing that the challenged claims would have been obvious in view of Chaffee and Wu.

II.

Team Worldwide also asserts that the Board erred in finding that the secondary considerations of nonobviousness submitted by Team Worldwide were insufficient to overcome Intex's *prima facie* case. *See 874 Decision* at 62–88; J.A. 468–94.

In particular, Team Worldwide asserts that it was entitled to a presumption of nexus regarding (1) competitor products for which infringement was stipulated; (2) its own products; and (3) airbeds advertised as "built-in pump" airbeds. The Board agreed only with regard to the first category, holding that Team Worldwide had failed to establish that its products practiced a challenged claim and that it

---

[9] A table in Cross-Appellant's brief lists as "Key Limitations Board Found Purportedly Disclosed" includes that Chaffee teaches the "inflatable body" limitation and that Chaffee, modified by Wu, teaches the "'air conduit' moveable for inflation/deflation" limitation. *See* Cross-Appellant's Br. at 29. However, Team Worldwide provides no additional argument that those holdings were unsupported by substantial evidence, and thus we do not address those findings here.

had advanced only conclusory arguments for the third category. *See 874 Decision* at 64–69; J.A. 470–75.

A patent owner is entitled to a presumption of nexus when it shows that the asserted objective evidence is tied to a specific product that "embodies the claimed features, and is coextensive with them." *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). We agree with the Board that Team Worldwide failed to provide sufficient support that its products embodied any of the challenged claims and that its arguments regarding advertised air beds are conclusory at best. *See 874 Decision* at 64–69; J.A. 470–75. Moreover, Team Worldwide never provided an analysis to establish coextensiveness, and therefore could not have established a presumption of nexus for its products. Although Team Worldwide also did not provide an analysis to establish coextensiveness for the first category of products stipulated to infringe the '394 patent, Intex did not appeal the Board's holding that a presumption of nexus existed for those products.

A patent owner is further "afforded an opportunity to prove nexus by showing that the evidence of secondary considerations is the 'direct result of the unique characteristics of the claimed invention.'" *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373–74 (Fed. Cir. 2019) (quoting *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996)). But Team Worldwide failed to establish that the proffered evidence of secondary considerations was the direct result of any unique characteristics of the claims. Instead, as the Board found, the record establishes that non-patented features, such as durability, comfort features, and firmness, drove sales, rather than the built-in pump. *See 874 Decision* at 71–76; J.A. 477–482. We therefore find that the Board's conclusion that Team Worldwide did not establish a nexus between its products and the claims was supported by substantial evidence.

Team Worldwide finally asserts that the Board erred in evaluating the secondary considerations of nonobviousness for the competitor products stipulated to infringe the '394 patent. Team Worldwide essentially asks this court to reweigh the evidence. We see no error in the Board's analysis of the individual secondary considerations of nonobviousness and determine that they are each supported by substantial evidence. Mere contradictory evidence and general disagreement are insufficient to overturn a finding of fact. *Velander*, 348 F.3d at 1378–79. We therefore affirm the Board's holdings that Team Worldwide failed to establish that secondary considerations overcome the *prima facie* case of obviousness in view of Chaffee and Wu.

At oral argument Intex confirmed that an affirmance of a determination of unpatentability in either the 870 or the 874 Decision would render all issues on appeal moot. Oral Argument, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1141_10052023.mp3, at 8:42–10:10. As we have affirmed the Board's holding in the 874 Decision that the challenged claims would have been obvious in view of Chaffee and Wu, we therefore need not reach the other issues raised on appeal or cross-appeal.

## CONCLUSION

We have considered Team Worldwide's remaining arguments and do not find them persuasive. For the foregoing reasons, we *affirm* the Board's determination in IPR2018-00874 that the challenged claims would have been obvious in view of Chaffee and Wu and dismiss the appeals of the 872 and 873 Decisions, as well as the cross-appeals of the 870 and 871 Decisions, as moot.

## AFFIRMED

## COSTS

Costs to Intex.